Present:  Carrico, C.J., Compton, Stephenson, Lacy, Hassell, and
Keenan, JJ., and Whiting, Senior Justice

USAA CASUALTY INSURANCE COMPANY

OPINION BY
v.    Record No. 950729        SENIOR JUSTICE HENRY H. WHITING
January 12, 1996

MICHAEL STEVEN HENSLEY, et al.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Gerald B. Lee, Judge

In this appeal, we decide whether an insured's family automobile liability policy provided liability coverage for a named operator's use of a non-owned automobile.

I.

In 1989, Vanessa Magdelena Hoang and her husband, John Paul Hoang, moved from California to Jidda, Saudi Arabia where Mr. Hoang was employed by Saudi Airlines.  While in Jidda, the Hoangs lived in a house with their four children.

No further education was available to the Hoang children in Saudi Arabia after the ninth grade.  Accordingly, the parents sent their two oldest children, Paul and George, to live with Mrs. Hoang's mother, Thaun Tuk Jones, in Centreville, Fairfax County, Virginia to continue their education.

George, who was 15 at the time, came to Centreville in the summer of 1990.  In March 1992, Michelle Jones, Mrs. Hoang's half-sister, also came to live in the Centreville single family house with her mother, Paul, George, and two of her mother's other children.

George ate, slept, and kept his belongings at his grandmother's house, and he spent all but one of his vacations there.  While living in his grandmother's house, George assisted

around the house by running errands, cleaning parts of the house, mowing the lawn, and cooking. He worked in the Centreville area during the summer of 1992, using his grandmother's address for employment and tax purposes.

Excluding the 1991-92 school year, when his parents sent him to a military academy in Front Royal, and a vacation to various cities in the United States with his parents in 1992, George lived continuously in his grandmother's house. He never visited his parents in Saudi Arabia after he came to Virginia.

George talked on the telephone frequently and corresponded infrequently with his parents in Saudi Arabia while he was living in Virginia. Mrs. Hoang returned from Saudi Arabia to her mother's house several times a year for visits of several days each to oversee her two sons' activities. She and her husband continued to support George and pay his educational expenses while he was in Virginia.

In July 1992, Mrs. Hoang contacted representatives of USAA Casualty Insurance Company (USAA)[*] seeking automobile liability coverage on a Volvo automobile she had recently purchased in Virginia, primarily for use by Paul and George. Based on information furnished by Mrs. Hoang, USAA listed her on the policy as the named insured, and listed her, her husband, Paul,

_____

[*]Although Hensley described USAA as "United States Automobile Association" in the caption of his "Complaint for Declaratory Judgment," the parties agree that the policy was issued by USAA Casualty Insurance Company, a wholly owned subsidiary of United Services Automobile Association.

and George as the operators of the insured vehicle. Additionally, Mrs. Hoang advised USAA that the insured vehicle was to be principally garaged at Mrs. Jones's house and that each operator had a Virginia driver's license. Shortly after buying the Volvo and the USAA insurance, Mrs. Hoang traded the Volvo for an Oldsmobile automobile, and USAA transferred coverage to the Oldsmobile.

In November 1992, Michelle asked George to take her Porsche automobile (covered by a separate USAA liability policy issued to Michelle) to a filling station to be refueled. While driving the Porsche to the filling station, George collided with a car driven by Michael Steven Hensley.

Hensley was injured in the collision and brought a personal injury action against George. Hensley also brought this declaratory judgment action against USAA, Mrs. Hoang, Michelle, and George to obtain a declaration that the USAA policy on Mrs. Hoang's Oldsmobile provided additional liability coverage to George in the personal injury action beyond the coverage provided by the USAA policy on the Porsche.

Upon attaining the age of 18 and after the accident, George registered to vote in Virginia and applied for admission to a state university, where he was accepted as an in-state student and charged the reduced tuition rate for Virginia residents.

After hearing evidence _ore tenus_ and considering the depositions of additional witnesses, the trial court entered a

-3-

declaratory judgment in conformity with Hensley's request.  USAA
appeals.

## II.

We resolve the issue in this appeal by considering the
pertinent language in the USAA policy on the Oldsmobile.
Liability coverage for the operation of a non-owned automobile is
provided to the named insured or "any relative" of the named
insured.  And a "relative" is defined in the policy as "a
relative of the named insured <u>who is a resident of the same
household</u>."  (Emphasis added.)

USAA argues that, because George was a resident of his
grandmother's household in Centreville, he was not a resident of
the same household as his mother.  Thus, USAA argues that George
was not a relative as defined in the policy.  On the other hand,
the other parties successfully contended in the trial court, and
contend on this appeal, that George qualified as a relative under
the policy definition because he was a resident of his mother's
household in Saudi Arabia.  We agree with USAA.

## III.

We have considered similar policy language in a number of
other cases.  In doing so, we said:

> The meaning of "resident" or "residence", a
> prolific source of litigation, depends upon the context
> in which it is used. . . .  Here, we must interpret the
> meaning of "resident", when followed by "of the same
> household".  The word "household", . . . connotes a
> settled status; a more settled or permanent status is
> indicated by "resident of the same household" than
> would be indicated by "resident of the same house or
> apartment".

-4-

Allstate Ins. Co. v. Patterson, 231 Va. 358, 361, 344 S.E.2d 890, 892 (1986)(quoting State Farm Mut. Auto. Ins. Co. v. Smith, 206 Va. 280, 285, 142 S.E.2d 562, 565-66 (1965)). Continuing, we also said:

> Whether the term "household" or "family" is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a "collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness".

Patterson, 231 Va. at 362, 344 S.E.2d at 892 (quoting Smith, 206 Va. at 285 n.6, 142 S.E.2d at 565-66 n.6).

And, as we noted in Patterson, a person's intent is important in determining whether he qualifies as a resident of a household. 231 Va. at 363, 344 S.E.2d at 893. However, since George was an unemancipated minor at the time of the accident, we must also consider his parents' intent in this determination. See Code § 16.1-334 (unemancipated minor cannot establish his own residence); see also Code § 16.1-333 (parent must consent to minor's emancipation); Brumfield v. Brumfield, 194 Va. 577, 581-82, 74 S.E.2d 170, 173-74 (1953) (intent of parent determines whether minor is emancipated), overruled on other grounds by Smith v. Kauffman, 212 Va. 181, 183 S.E.2d 190 (1971). Here, there is no evidence of an intent on the part of George or his parents that he would return to Saudi Arabia to rejoin their household there. On the contrary, the evidence indicates that

-5-

his parents intended that George become a part of his grandmother's household until they returned from Saudi Arabia. There is no evidence that George left any of his belongings in Saudi Arabia, that he maintained a room in his former residence there, that he ever returned to visit, or that he had anything more than telephone and mail contact with his parents while they were in Saudi Arabia.

After George came to live with his grandmother, his parents saw him only in Virginia and on their vacation in the summer of 1992. His parents supplied George with a car titled in Virginia and registered at his grandmother's address, and they permitted him to get a Virginia driver's license. Furthermore, George was allowed to spend his vacations in Virginia, work there during the summer, and apply for admission to a Virginia university as a Virginia resident. Additionally, George's parents must have known that George was more than a mere boarder at his grandmother's house, as evidenced by his activities in contributing to the common burdens associated with the operation of a household.

Even though George testified that his grandmother's house was not his "home," the extended period of his residence there with no apparent intention on his or his parents' part for him to return to his parents' home in Saudi Arabia, as well as his activities at his grandmother's house, gainsay this conclusion. Instead, we think this evidence indicates that George was living

with his relatives in a unit of permanent and domestic character, subsisting in common, in which each household member, including George, participated in the promotion of their mutual interests and social happiness.  See Patterson, 231 Va. at 362, 344 S.E.2d at 892.  Under these facts and circumstances, we conclude that reasonable persons could not differ in concluding that, at the time of the collision, George was a member of his grandmother's household in Virginia, and was no longer a member of his mother's household in Saudi Arabia.  Accordingly, we think that the trial court erred in concluding that Mrs. Hoang's USAA policy on the Oldsmobile provided additional coverage against George's possible liability to Hensley.

Therefore, we will reverse the trial court's judgment and enter final judgment in this Court declaring that George was not covered by Mrs. Hoang's USAA policy when he operated his aunt's Porsche and collided with Hensley.

Reversed and final judgment.