COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Coleman and Willis
Argued at Salem, Virginia


STUART M. BERGMAN

v.         Record No. 1876-96-3

JANICE L. BERGMAN
                                            OPINION BY
                                  JUDGE SAM W. COLEMAN III
JANICE L. BERGMAN                        JULY 15, 1997

v.         Record No. 1948-96-3

STUART M. BERGMAN


            FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
                    Martin F. Clark, Jr., Judge

            Philip G. Gardner (Gardner, Gardner, Barrow &
            Sharpe, P.C., on briefs), for Stuart M.
            Bergman.

            H. Morgan Griffith for Janice L. Bergman.



        The issue in these appeals is whether the trial court erred
in interpreting the terms "reside" and "cease" when construing
the spousal support provision of the parties' separation
agreement.  Both parties appeal the trial court ruling.  We hold
that the trial court erred in finding that the word "reside" was
an ambiguous term requiring the admission of parol evidence.
Further, we hold that the evidence failed to prove that the
former wife violated the "reside" provision in the separation
agreement.  Finally, we hold that the trial court erred in
finding that the word "cease" was ambiguous and interpreting that
term in the agreement to mean "temporarily suspend."

Accordingly, we reverse the trial court's decision.

FACTS

In April 1989, Stuart and Janice Bergman entered into a property settlement agreement in which Mr. Bergman agreed to pay spousal support in an amount equal to twenty-five percent of his salary up to $160,000 and twenty percent of his salary, including bonuses, that exceeded $160,000. The paragraph of the agreement in controversy stated, "[s]pousal maintenance and support shall cease in the event Janice L. Bergman resides with a male person to whom she is not married excluding immediate relatives such as her father or a brother or male child." (Emphasis added). The trial court ratified, confirmed and approved the agreement and incorporated certain provisions, including the spousal support provision, into the final divorce decree.

In 1994, Mr. Bergman filed a petition to terminate spousal support based on the foregoing provision of the settlement agreement. He alleged that Janice Bergman was residing with a male to whom she was not married.

At the hearing on Mr. Bergman's petition, Mr. Bergman presented evidence that he had observed a man at his former wife's home on several occasions. Mr. Bergman then hired a private investigator, who began surveillance of Janice Bergman's home to determine whether the man was "residing" with her. The combined surveillance by Mr. Bergman and the investigator lasted several years. During that time, the man's vehicle and Janice

Bergman's vehicle were seen at the same location, either at her home or his home, late at night on numerous occasions. Mr. Bergman introduced into evidence detailed notes and a calendar chronicling the dates and times on which he and the investigator observed that the man "spent the night" with Janice Bergman.

Janice Bergman confirmed that the truck seen at her home by her former husband and the investigator was that of a male friend whom she dated. She testified that they had a dating relationship and acknowledged that they had spent nights together but only on intermittent weekends. When the man stayed overnight, he slept in her room. Janice Bergman testified that her friend did not keep his clothing or toiletries at her home and did not have a key to her house. Further, her male friend did not receive mail at her house, nor did they have a joint post office box. Janice Bergman further testified that she and the man never helped each other financially and that she did not use his truck and he did not use her car. Janice Bergman refuted several of the investigator's entries, stating that she and her friend were out of town together at a time when, according to the investigator's notes, the investigator had purportedly observed their cars moving between the two houses.

The man's brother and sister, who lived with him at their parents' home, testified that he had moved into a bedroom in the basement of their parents' home in July or August of 1993. His sister testified that he usually had dinner with the family and

rarely spent the night away from their home. The man's father testified that his son did not spend the night away from home often and that he did not pay rent or contribute to household expenses.

The man's employer testified that, due to the nature of his job in the maintenance department for Glass Dynamics, he was subject to being called to work at any time. However, the man never gave Janice Bergman's address or telephone number to his employer. Instead, he gave his home and his parents' home phone numbers and addresses.

The parties' son, Robert, lived at home with his mother until he went to college in 1994. He testified that, although his mother and the man had a dating relationship, the man kept no clothing or personal effects at his mother's home. The only item in the house that the son could recall that belonged to the man was a broken shop vacuum kept in the garage. While Robert was living at home, the man stayed at the house, at most, three or four nights per month and never two nights in a row. Robert also testified that the investigator's notes concerning the man's staying at the house during the weekend of December 4, 1993 were incorrect because he recalled being home alone studying.

The trial judge ruled that the term "reside" as used in the settlement agreement was ambiguous; therefore, the judge received parol evidence to determine the parties' intent when using the term, "reside." After receiving the evidence, the trial judge

ruled that the term "reside" as used in the agreement meant:

> that either party would move into the home of the other a significant amount of clothing or personal property[,] . . . that the parties would spend more than four nights . . . together per calendar month under the same roof with each other[,] . . . that the parties would spend more than two consecutive nights together under the same roof, that would exclude vacations and out-of-town trips[, and] . . . that a party received mail or had a phone listing or made a significant economical or nonmonetary contribution to the home or the residence of the other . . . .

The judge found that, based upon the evidence presented, the man was "residing" with Janice Bergman in violation of the settlement agreement provision. The trial judge then interpreted the term "shall cease" in the same provision to mean that spousal support would be suspended while Janice Bergman was "residing" with an unrelated male but would be reinstated once she was no longer "residing" with "a male person" other than her father, brother, or male child.

ANALYSIS

Property settlement agreements are contracts subject to the same rules of formation, validity, and interpretation as other contracts. Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986); Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985). "Extrinsic evidence can be admitted to explain an ambiguity in a document. However, the ambiguity must be apparent on the face of the instrument." Cohan v. Thurston, 223 Va. 523, 525, 292 S.E.2d 45, 46 (1982). A contract term is not

- 5 -

ambiguous merely because the parties disagree as to the term's meaning. Ross v. Craw, 231 Va. 206, 212-13, 343 S.E.2d 312, 316 (1986); Smith, 3 Va. App. at 513-14, 351 S.E.2d at 595. Rather, the question of whether a writing is ambiguous is a matter of law, not of fact. Langman v. Alumni Ass'n of the Univ. of Virginia, 247 Va. 491, 498, 442 S.E.2d 669, 674 (1994); Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984). "Thus, we are not bound by the trial court's conclusions on this issue, and we are permitted the same opportunity as the trial court to consider the contract provisions." Tuomala v. Regent University, 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996).

> "It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

Wilson, 227 Va. at 187, 313 S.E.2d at 398 (quoting Meade v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984)).

"In construing the terms of a property settlement agreement, just as in construing the terms of any contract, we are not bound by the trial court's conclusions as to the construction of the disputed provisions." Smith, 3 Va. App. at 513, 351 S.E.2d at 595 (citations omitted); Hedrick v. Hedrick, 3 Va. App. 452, 455, 350 S.E.2d 526, 528 (1986). "[I]f all the evidence which is

necessary to construe a contract was presented to the trial court and is before the reviewing court, the meaning and effect of the contract is a question of law which can readily be ascertained by this court." Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987).

We hold that the term "reside," as used by the parties in this contract, is not ambiguous. No other provisions in the contract render the term confusing or ambiguous. The contract does not evidence any intent that the word was used in a special way or was intended to have a meaning other than its ordinary meaning. Thus, in construing and enforcing the provision of the agreement we apply the plain meaning of the term, "resides with." Smith, 3 Va. App. at 514, 351 S.E.2d at 595-96 ("When the terms of a disputed provision are clear and definite, it is axiomatic that they are to be applied according to their ordinary meaning. . . ."). In common usage, to "reside" is "[to] settle oneself or a thing in a place, to be stationed, . . . to dwell permanently or continuously, [to] have a settled abode for a time, [to] have one's residence or domicile." Webster's Third New International Dictionary 1931 (1981).[1]

_____

[1]Stuart Bergman argues that "reside" is capable of being interpreted in more than one way, rendering the term ambiguous. Although "reside" is not synonymous with "resident" or "residence," the definition of those terms supports our holding that "reside" is not an ambiguous term. To "reside" is to be a "resident" or have a "residence" as those terms have been interpreted by Virginia courts. Virginia cases interpreting the terms "residence" and "resident" have generally given the terms their plain meaning. See Long v. Ryan, 71 Va. (30 Gratt.) 718 (1878) (conflict of laws case interpreting "residence" to mean a

Thus, the factors that determine whether a person "resides" with another, as that term is used in the parties' agreement, include determining whether the persons are living together on a continuous or frequent basis with some degree of permanency, whether they have clothing and/or personal belongings in the same home or residence, whether they receive mail or frequent phone calls at each other's home, whether they contribute to the payment of bills or make significant nonmonetary contributions to the home, and whether they intend the home to be their residence. Unlike the term "cohabit," the term "reside" does not encompass consideration of the personal relationship between the individuals. See Schweider v. Schweider, 243 Va. 245, 248, 415 S.E.2d 135, 137 (1992); Frey v. Frey, 14 Va. App. 270, 273, 416 S.E.2d 40, 42 (1992). Thus, no proof of an intimate relationship would be necessary to prove that Janice Bergman was "residing" with an unrelated male. Furthermore, the length of time that a

(..continued)
place "to abide, to sojourn, to dwell . . . permanently or for a length of time[,] . . . as contradistinguished from the mere temporary locality of existence"); Smith v. Smith's Ex'r, 122 Va. 341, 94 S.E. 777 (1918) (same); Griffin v. Woolford, 100 Va. 473, 41 S.E. 949 (1902) (same). Although the terms "resident" and "residence" have been interpreted to have the same meaning as "domicile" for purposes of the election laws and tax laws, see Dotson v. Commonwealth, 192 Va. 565, 66 S.E.2d 490 (1951) (election laws); Talley v. Commonwealth, 127 Va. 516, 103 S.E. 612 (1920) (tax laws), the contract in this case contains nothing to indicate an intent by the parties that the term "reside" be given any meaning other than its ordinary one. Compare USAA Cas. Ins. Co. v. Henley, 251 Va. 177, 181, 465 S.E.2d 791, 793 (1996) (giving special meaning to the term "resident of the household" as compared to "resident"); Allstate Ins. Co. v. Patterson, 231 Va. 358, 361, 344 S.E.2d 890, 892 (1986) (same).

person lives at a particular location is but one factor that governs whether the person "resides" at a location.  Accordingly, we look to the circumstances of each case to determine whether one person "resides with" another.

Under the facts of this case, the evidence failed to prove, as a matter of law, that Janice Bergman was residing with the man she was dating.  He did not have clothing, toiletries, or personal belongings at Janice Bergman's home.  In addition, he did not have a key or access to her home.  No evidence proved that he spent time there while Janice Bergman was away, as a person who "resides" at the home would have done.  See Pendleton v. Pendleton, 918 P.2d 159, 160 (Utah 1996).  No evidence was presented that the man intended to "reside with" Janice Bergman.  In fact, the evidence indicated that he was no more than a frequent overnight visitor during the two year period that they dated.  Thus, we hold that the trial court's finding that Janice Bergman was "residing with" the man is not supported by the record.

Turning to the trial court's ruling concerning the term "shall cease" in the parties' agreement, we hold that the trial court erred in finding that the term meant "temporarily suspend."  "'[C]ourts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein.'"  Henderlite v. Henderlite, 3 Va. App. 539, 541, 351 S.E.2d 913, 914 (1986) (quoting Wilson v. Holyfield, 227 Va. 184,

187, 313 S.E.2d 396, 398 (1984)).  "Where there is no ambiguity in the terms of a contract, we must construe it as written, . . . and we are not at liberty to search for the meaning of the provisions beyond the pertinent instrument itself."  Smith, 3 Va. App. at 514, 351 S.E.2d at 595-96.

At the hearing, neither party contended that the term "shall cease" was ambiguous and no parol evidence was introduced as to what the parties intended when they used the term.  The term "shall cease" is not ambiguous; its meaning is clear and certain.  The contract provides that spousal support "shall cease" in the event of death of either party, the remarriage of Janice Bergman, or in the event she should reside with a male person to whom she is not married other than relatives, such as a father, brother, or son.  As the term is used, it is clear that the parties intended "shall cease" to mean "end permanently."

For the foregoing reasons, we reverse the trial court's decision and hold that Stuart Bergman failed to prove a change in condition under the terms of the parties' settlement agreement. Accordingly, we dismiss the case.

Reversed and dismissed.