## CIRCUIT COURT OF FAIRFAX COUNTY

Susan Baldassari

v.

Jeffrey Morrow,
Terry Morrow,
Karen Morrow,
State Farm Fire and Casualty Co.,
and Government Employees Ins. Co.

March 20, 2002

Case No. (Chancery) 166932

BY JUDGE DAVID T. STITT

This matter came before the Court on a Motion for Declaratory Judgment to determine whether Defendant Jeffrey Morrow was a resident of his parents' household on February 11, 1998. Following oral argument by counsel, the Court took the matter under advisement.

*Factual Background*

Jeffrey Morrow is the son of Terry and Karen Morrow. From February 1993 to December 1995, Jeffrey attended Radford University in Radford, Virginia. Following graduation from college in 1995, Jeffrey returned home to live with his parents.

For several years, Jeffrey has been romantically involved with Lauren Fatz. On October 24, 1997, Jeffrey and Lauren Fatz moved into an apartment together after negotiating a lease, arranging for activation of utilities and securing renters' insurance. Jeffrey moved most of his belongings into the new apartment and notified his friends and creditors of his change of address. After Jeffrey moved out, Terry and Karen Morrow used his bedroom as an office. At

the time of the move, Jeffrey was self-supporting and was not receiving monetary support from his parents.

On February 11, 1998, Jeffrey was involved in an automobile collision in which Plaintiff Susan Baldassari was injured. Baldassari filed the instant action against Jeffrey Morrow.

During the course of the action, Baldassari asserted that a State Farm Fire & Casualty Company insurance policy issued to Terry and Karen Morrow was available to satisfy her claim for damages. State Farm denied coverage, maintaining that Jeffrey Morrow was not a resident of his parents' household on the date of the accident and, therefore, was not an insured as defined by the policy.

## Analysis

The Morrow's umbrella insurance policy, in pertinent part, defines an "insured" as: "(a) the named insured; (b) the following residents of the named insured's household (1) the named insured's relatives. . . ."

The issue before the Court is whether on February 11, 1998, Jeffrey Morrow was a "resident" of his parents' household under the policy.

The Virginia Supreme Court has held that:

> [t]he term "household" embraces a collection of persons living together as a single group with one head under one roof, a unit of permanent and domestic character.

*State Farm v. Furrow*, 237 Va. 77, 80, 375 S.E.2d 738, 740 (1989). See also *USAA v. Hensley*, 251 Va. 177, 181, 465 S.E.2d 791, 794 (1996).

The Virginia Supreme Court also has addressed the terms "resident" and "household" together:

> The meaning of "resident" or "residence," a prolific source of litigation, depends upon the context in which it is used. Here we must interpret the meaning of "resident," when followed by "of the same household." The word "household" denotes a settled status; a more settled or permanent status is indicated by "resident of the same household" than would be indicated by "resident of the same house or apartment."

*State Farm Mutual Auto. Ins. Co. v. Smith*, 206 Va. 280, 285, 142 S.E.2d 562, 565-66 (1965).

In *USAA v. Hensley*, 251 Va. 177, 465 S.E.2d 791 (1996), a child who maintained a residence in Saudi Arabia was involved in an automobile accident in Virginia. At the time of the accident, the son, George, was living with his maternal grandmother in Virginia. His aunt also lived in the home. The issue was whether George and his aunt were relatives living in the same household. The Virginia Supreme Court held, as a matter of law, that George was a resident of the household at the time of the accident. The court found that George was "living with his relatives in a unit of permanent and domestic character, subsisting in common, in which each household member, including George, participated in the promotion of their mutual interest and social happiness." *USAA v. Hensley*, 251 Va. 177, 182, 465 S.E.2d 791 (1996).

The evidence shows that Jeffrey Morrow was a self-supporting and educated adult when he unilaterally decided to move from his parents' home in 1997. He removed most of his belongings, entered into contracts for an apartment rental, utilities, and services, and notified his friends and creditors of his new address. After the accident, he told police, the courts, and his healthcare providers that he resided at the apartment.

Through responses to requests for admissions, Jeffrey, Terry, and Karen Morrow have admitted that when Jeffrey moved from the home of Terry and Karen Morrow in October 1997, they intended the move to be permanent and that, from the date of the move until the date of the accident, there was no discussion about Jeffrey's moving back to his parents' household.

Much of Plaintiff Baldassari's argument is based on speculation as to what might have occurred had Jeffrey Morrow asked permission to return to his parents' home after he had moved out. The fact is that Jeffrey Morrow moved from his parents' house in October 1997 and established his own household, where he resided until the time of the accident.