**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-2281**

---

CHRISTINA MILLER, Administratrix of the Estate
of Travis L. Landis Hott,

Plaintiff - Appellant,

versus

AUGUSTA MUTUAL INSURANCE COMPANY,

Defendant - Appellee,

and

ROBERT M. LUTTRELL, JR.,

Defendant.

---

Appeal from the United States District Court for the Western
District of Virginia, at Harrisonburg. Samuel G. Wilson, District
Judge. (CA-03-052)

---

Argued: September 21, 2005          Decided: December 8, 2005

---

Before MOTZ, TRAXLER, and SHEDD, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Robert Woodrow Malone, GAMMON & GRANGE, McLean, Virginia,
for Appellant. Daniel Leroy Fitch, WHARTON, ALDHIZER & WEAVER,
P.L.C., Harrisonburg, Virginia, for Appellee. **ON BRIEF:** Robert B.
Adams, GAMMON & GRANGE, McLean, Virginia, for Appellant. Kristin

A. Zech, WHARTON, ALDHIZER & WEAVER, P.L.C., Harrisonburg, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Christina Miller's son Travis Hott was shot and killed by his friend Robert M. Luttrell, Jr. ("Mitch"). Miller filed this action seeking a declaration that her wrongful death claim fell within the scope of coverage of a homeowner's insurance policy issued by Augusta Mutual Insurance Company to Mitch's parents. The district court granted summary judgment in favor of Augusta Mutual, and Miller appeals. For the reasons set forth below, we affirm the decision of the district court.

I.

A.

On the night of September 14, 2001, 13-year-old Travis Hott was spending the weekend with his best friend Mitch Luttrell, who was then 17 years old. While the boys were watching television in the living room, Mitch shot Travis at close range with a 9mm pistol, killing him. Mitch's parents were asleep in their bedroom when the shooting occurred. The gun belonged to Mitch's father; Mitch had retrieved it from the gun safe earlier that evening. The facts surrounding the shooting remain a mystery. Since the shooting, Mitch has given different explanations, stating variously that Travis shot himself; that Mitch accidentally sat on the gun, which caused it to fire; and that Mitch was waving the gun around

3

and pulled the trigger without knowing that there was a bullet in the chamber.

## B.

The policy issued by Augusta Mutual requires written notice of a potential claim to be made as soon as practical. The policy also includes a cooperation clause that requires insureds to "secure and give evidence." J.A. 472.

On November 19, the attorney representing Miller notified the insurance company that a wrongful death action would be filed. Prior to that notice, Augusta Mutual (through its agent) had at least some knowledge of the incident. Mrs. Luttrell, Mitch's mother, spoke to her insurance agent about the incident a few days after it occurred, inquiring generally about the possibility of coverage, but not giving the agent any details about the shooting. And about ten days after the shooting, Miller personally visited the insurance agent and spoke about the shooting, although Miller at that time did not mention a lawsuit.

Over the next two months, Augusta Mutual made repeated efforts to get a statement from Mitch and advised him and his parents of their duties under the policy to cooperate with Augusta Mutual's investigation. By this time, however, it was clear that charges would be filed against Mitch, and Mitch's criminal attorneys informed Augusta Mutual that they would not permit Mitch to make

4

any statements about the shooting while the criminal charges were pending. A preliminary hearing on Mitch's criminal charges was held in December 2001. The state court found probable cause to charge Luttrell with second-degree murder and use of a firearm in the commission of a felony. In January 2002, a grand jury formally indicted Mitch on those charges. Shortly after Mitch was indicted, Miller filed in state court a wrongful death action against Mitch and his father.

On January 21, 2002, Mitch and his parents gave statements under oath as part of Augusta Mutual's investigation of the shooting. Mitch, who was accompanied by his criminal attorney, refused to answer any questions about the shooting, asserting his Fifth Amendment rights as his attorney advised him to do. Given Mitch's refusal to provide any statements to Augusta Mutual, the company concluded that he breached his duty to cooperate. Augusta Mutual thus declined to defend Mitch in Miller's wrongful death action.[1] Mitch pleaded guilty to involuntary manslaughter in September 2002 and was sentenced to 10 years imprisonment.

In October 2002, Miller voluntarily dismissed her state-court wrongful death action. A week later, she filed in federal district court (based on diversity of citizenship) another wrongful death action against Mitch and his father. Augusta Mutual defended Mr.

---

[1]The company did, however, provide a defense to Mr. Luttrell, Mitch's father, with regard to the wrongful death suit.

Luttrell, but still refused to defend Mitch. Mitch defaulted, and on June 17, 2003, the district court granted judgment in favor of Miller on the issue of Mitch's liability for Travis's death. The court did not at that time consider the question of the damages to which Miller might be entitled.

Shortly after the entry of default against Mitch, Miller filed this action against Augusta Mutual, seeking a determination of her rights under the Luttrells' homeowners policy. Augusta Mutual moved for summary judgment. In that motion, Augusta Mutual argued, among other things, that the complaint should be dismissed for failure to join the Luttrells, who Augusta Mutual contended were indispensable parties. At a hearing on the pending motions, Miller argued that, as a third-party beneficiary of the insurance policy, she stood in Mitch's shoes as to the coverage question and that he was not a necessary party. After a discussion in chambers with the district court, the parties agreed that Mitch would be joined as a defendant. Miller amended her complaint and added Mitch as a defendant.

Several months later, before ruling on Augusta Mutual's still-pending motion for summary judgment, the district court informed the parties that it believed Mitch should be re-aligned as a plaintiff, since his interests were adverse to Augusta Mutual and, at least as to the basic question of whether there should be coverage, consistent with Miller's interests. However, because

6

Augusta Mutual was for purposes of diversity jurisdiction a citizen of Virginia, aligning Mitch (also a Virginia resident) as a plaintiff would destroy diversity jurisdiction. The court informed the attorneys that if Mitch remained a party to the case, the court would re-align him as a plaintiff and then dismiss the case for lack of subject matter jurisdiction. Alternatively, if the parties agreed, the court would dismiss Mitch from the action, retain jurisdiction, and issue its ruling. The parties agreed to the dismissal of Mitch from the action.

Thereafter, the district court ruled on Augusta Mutual's pending summary judgment motion. The court concluded that Mitch breached his duty to cooperate by asserting his Fifth Amendment rights and declining to give a statement to Augusta Mutual. The court therefore concluded that the Augusta Mutual policy was void as to Mitch and that Augusta Mutual had no obligation to defend Mitch against Miller's wrongful death claim or pay any judgment that might ultimately be entered against him. This appeal followed.

## II.

On appeal, Miller contends that once the district court dismissed Mitch as a defendant, she lacked standing to maintain this declaratory judgment action, because Virginia law requires a judgment to first be entered against the insured before a third

7

party can bring an action directly against the tortfeasor's insurer.  Thus, Miller contends that the district court lacked subject matter jurisdiction over her claim.  On the merits of the coverage question, she claims that the district court erred by granting summary judgment in favor of Augusta Mutual.

## III.

We consider first Miller's claim that she lacked standing to maintain the declaratory judgment action and that the district court therefore lacked subject matter jurisdiction over her claim.

The Constitution limits federal court jurisdiction to cases and controversies.  See U.S. Const. art. III, § 2.  The concept of standing--which requires that the plaintiff have a sufficiently personal stake in the outcome of the litigation--forms an indispensable part of the Article III case-or-controversy requirement.  See Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38 (1976); White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005).[2]

Miller's argument that she lacks standing is based on certain aspects of Virginia law.  Under Virginia law, direct actions by an

---

[2]There is another branch of the standing doctrine--prudential standing--that springs not from the Article III case-or-controversy requirement but instead "embodies judicially self-imposed limits on the exercise of federal jurisdiction."  Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, ___, 124 S. Ct. 2301, 2308 (2004) (internal quotation marks omitted).  In this case we are concerned only with Article III standing requirements.

8

injured third-party against an insurer are not permitted until a judgment has been entered against the insured tortfeasor. See United Servs. Auto. Ass'n v. Nationwide Mutual Ins. Co., 241 S.E.2d 784, 788 (Va. 1978). Miller contends that by virtue of these Virginia requirements, she lacked standing to maintain the declaratory judgment action, because no final judgment had been entered against Mitch when she commenced this action.[3] Miller contends that Mitch was a necessary and indispensable party from the beginning, that his addition to the action cured the standing problem because as an insured Mitch clearly had standing to ask for a declaration of Augusta Mutual's obligations, and that Mitch's subsequent dismissal from the action re-instated the previously unrecognized standing problem.[4]

---

[3]As mentioned previously, Mitch defaulted in the federal wrongful death action. The district court entered an order holding Mitch liable for Travis's death, but, by the time the notice of appeal in this case was filed, the court had not yet entered an order awarding damages. The district court's docket indicates that the court has since entered an order awarding Miller damages in excess of $250,000.

[4]Miller and Augusta Mutual acquiesced in the district court's decision to dismiss Mitch, and Miller never argued below that she lacked standing to maintain the declaratory judgment action. Nonetheless, because standing implicates the subject-matter jurisdiction of federal courts, we are obligated to ensure that the constitutional standing requirements have been satisfied, whether or not the issue has been timely raised by the parties. See Juidice v. Vail, 430 U.S. 327, 331 (1977) ("Although raised by neither of the parties, we are first obliged to examine the standing of appellees, as a matter of the case-or-controversy requirement associated with Art. III. . . .").

Preliminarily, we note that whether a plaintiff in federal court has standing to maintain an action is a question of federal, not state law. See Phillips Petrol. Co. v. Shutts, 472 U.S. 797, 804 (1985) ("Standing to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court."); White v. National Union Fire Ins. Co., 913 F.2d 165, 167 (4th Cir. 1990) ("Federal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction."). Thus, even if Virginia courts would conclude that Miller lacked standing to pursue a declaratory judgment action against Augusta Mutual,[5] it does not follow from that conclusion that Miller lacks standing to pursue a declaratory judgment action in federal court. Whether Miller has standing to maintain this declaratory judgment action is a question that must be resolved under well-established principles of federal law.

A declaratory judgment may be issued only if the Article III case-or-controversy requirements are satisfied. See 28 U.S.C.A. §

---

[5]It is not even clear that Virginia courts would conclude that Miller lacked standing to maintain a declaratory judgment action in state court. While Virginia law prohibits third-parties from bringing direct actions against an insurer before judgment has been entered, the Virginia Supreme Court has permitted (albeit without discussion of the standing question) an injured party to bring a declaratory judgment action against the tortfeasor's insurer before obtaining a judgment against the tortfeasor. See Craig v. Dye, 526 S.E.2d 9, 10 (Va. 2000); USAA Cas. Ins. Co. v. Hensley, 465 S.E.2d 791, 793 (Va. 1996); Providence Washington Ins. Co. v. Gheen, 439 S.E.2d 333, 333 (Va. 1994).

2201(a) (West 1994) (stating that "[i]n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration"); <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 241 (1937) (explaining that the "actual controversy" requirement is synonymous with the Article III requirements). "Although declaratory judgments are frequently sought in advance of the full harm expected, they must still present a justiciable controversy rather than abstract, hypothetical or contingent questions." <u>St. Thomas-St. John Hotel & Tourism Ass'n v. United States Virgin Islands</u>, 218 F.3d 232, 240 (3d Cir. 2000) (internal quotation marks omitted)).

Whether the subject of a declaratory judgment action is a sufficiently live controversy rather than an abstract question "is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." <u>Maryland Cas. Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Id.</u>; <u>see</u> <u>White</u>, 913 F.2d at 167 ("The test for a case or controversy, the constitutional inquiry, is whether the dispute

11

is definite and concrete, touching the legal relations of parties having adverse legal interests." (internal quotation marks omitted)).

We believe these requirements are easily met in this case. When Miller commenced this action, the district court in her wrongful death case had already entered against Mitch a default judgment on liability. Thus, while there was at the time of filing a question about the extent of damages that would be awarded, there was no doubt that some amount of damages would be awarded. The certainty of a damage award against one of Augusta Mutual's insureds thus makes the coverage question definite and concrete. Miller and Augusta Mutual clearly have adverse legal interests, and a ruling that Augusta Mutual would or would not be required to answer for the damages that would be assessed against Mitch would resolve a real, concrete question based on existing facts. Accordingly, we conclude that, as a matter of federal law, Miller had standing in her own right to pursue her declaratory judgment action against Augusta Mutual, without regard to whether Mitch was a party to the action. See Maryland Casualty Co., 312 U.S. at 274 (in case where insurance company brought declaratory judgment action against its insured and third-party injured by its insured, Court concluded that an actual controversy existed between the insurance company and the injured third-party); American States Ins. Co. v. Bailey, 133 F.3d 363, 368 (5th Cir. 1998) (in case

12

where insurer brought declaratory judgment action against its insured and the parties injured by the insureds, court concluded that there was a case or controversy even though injured parties' claims against insured had not been reduced to judgment); <u>Federal Kemper Ins. Co. v. Rauscher</u>, 807 F.2d 345, 353 (3d Cir. 1986) (concluding that entry of default against tortfeasor in insurer's declaratory judgment action against tortfeasor and injured parties did not require entry of judgment against injured parties, because they had "standing to defend the declaratory judgment action despite the absence of . . . the actual insured"); <u>Vermont Mut. Ins. Co. v. Everette</u>, 875 F. Supp. 1181, 1186 (E.D. Va. 1995) (applying Virginia law and concluding that actual controversy for purposes of Declaratory Judgment Act existed between insurer and injured third party despite entry of default judgment against insured tortfeasors).  Because Miller had standing to bring this action, the district court had subject matter jurisdiction over her claim.

IV.

We turn now to Miller's challenges to the district court's rulings on the merits of her claim.  The district court concluded that by asserting his Fifth Amendment rights and refusing to provide a statement to Augusta Mutual, Mitch breached his duty under the policy to cooperate with Augusta Mutual's investigation

13

of Miller's claim. The district court thus granted summary judgment in favor of Augusta Mutual. We review the district court's grant of summary judgment <u>de novo</u>, applying the same standards as the district court. See <u>Gallagher v. Reliance Std. Life Ins. Co.</u>, 305 F.3d 264, 268 (4th Cir. 2002).

Under Virginia law, a duty-to-cooperate clause creates a condition precedent to an insurer's liability under the policy. A material breach of the duty to cooperate relieves the insurer of its liability under the policy, even if the insurer is not prejudiced by the lack of cooperation. See <u>Cooper v. Employers Mut. Liability Ins. Co.</u>, 103 S.E.2d 210, 214 (Va. 1958). As the district court concluded, Mitch breached his duty to cooperate when he asserted his Fifth Amendment rights and declined to give a statement. See <u>Powell v United States Fidelity & Guaranty Co.</u>, 88 F.3d 271, 274 (4th Cir. 1996) (applying Virginia law and concluding that insureds' assertion of Fifth Amendment rights amounted to breach of obligation to cooperate with insurer: "[T]hey may avoid incriminating themselves by refusing to submit to relevant requests made by USF&G under the policy provision, although to do so may ultimately cost them insurance coverage. . . ."). Because Mitch was the only other person in the room when Travis was shot, his refusal to give a statement is clearly a material breach of his duty to cooperate.

Miller does not directly dispute this analysis. That is, she does not argue that an insured's assertion of his Fifth Amendment rights should not be viewed as a breach of the duty to cooperate.[6] Instead, Miller makes various tangential arguments that she believes undermine the district court's ruling and render the granting of summary judgment premature.

A.

Miller first contends that there is a question of fact as to when Augusta Mutual received notice of the claim. Miller claims that Augusta Mutual, through the agent that sold the Luttrells the policy, knew about the shooting within a few days after it happened

---

[6]Miller does, however, argue that Augusta Mutual failed to prove that Mitch breached his duty of cooperation. Under Virginia law, the insurer carries the ultimate burden of proving that the insured breached his duty of cooperation. See Erie Ins. Exchange v. Meeks, 288 S.E.2d 454, 456 (Va. 1982). Once Mitch asserted his Fifth Amendment rights during the statement under oath, counsel for Augusta Mutual clarified that Mitch was refusing to answer any questions about the shooting, and the questioning ended. Miller apparently believes that to prove a refusal to cooperate, Augusta Mutual was required to ask a series of specific questions about what happened the night of the shooting. See Brief of Appellant at 26 ("As [Augusta Mutual] has the burden of proving its insured's non-cooperation it cannot, as a matter of law, carry that burden without a record of the information that it was trying to obtain. All that this record shows is that the insured answered every question that he was asked."). This argument is without merit. Mitch made it clear that he would not answer any questions about the shooting, and the blanket invocation of his Fifth Amendment rights sufficiently establishes his failure to cooperate.

but yet waited two months to begin investigating the case.[7] Miller contends that Augusta Mutual's failure to immediately investigate the claim makes Mitch's subsequent breach of the policy meaningless. See Continental Cas. Co. v. Burton, 795 F.2d 1187, 1193-94 (4th Cir. 1986) (stating that under Virginia law, "to establish that the insured has breached a cooperation clause . . ., the insurer must prove that the insured willfully breached the clause in a material or essential particular and that the insurer made a reasonable effort to secure the insured's cooperation." (emphasis added)).

We disagree. Even assuming that the oral notices given by Miller and Mrs. Luttrell to the insurance agent were sufficient, the record establishes that Augusta Mutual made repeated (unsuccessful) efforts to get information about the shooting from the Luttrells. Even if, as Miller asserts, Augusta Mutual took no action for two months after receiving oral notice of the incident, we believe that Augusta Mutual's efforts at investigating the incident were reasonable as a matter of law. Miller's assertion

_____

[7]As noted previously, Mrs. Luttrell spoke to her insurance agent about the shooting a few days after it occurred, inquiring generally about the possibility of coverage, but not giving the agent any details about the shooting. And about ten days after the shooting, Miller visited the insurance agent and spoke about the shooting, although Miller at that time did not mention a lawsuit. The shooting happened on September 14, 2001; Augusta Mutual began formally investigating the incident on November 19, 2001, when Miller's attorney informed the company that a wrongful death action would be filed.

16

that Augusta Mutual could have convinced Mitch to explain what happened if the company had tried to interview him immediately after the shooting (when he was giving conflicting statements to the police) is sheer speculation that is insufficient to create a genuine issue of material fact on this issue.

B.

Miller also contends that the policy did not require Mitch to give a statement under oath, and that his assertion of his Fifth Amendment rights therefore did not breach the policy. We disagree.

Although one section of the Augusta Mutual policy specifically requires the insured to provide statements under oath when requested, the liability section of the policy includes no such requirement. That the liability section did not require a statement under oath, however, does not mean that the Luttrells could refuse to give such a statement if the company asked. The liability section of the policy requires the insureds to "secure and give evidence," a requirement that is broad enough to require the Luttrells to submit to an examination under oath if that is how Augusta Mutual chose to proceed. Thus, even if the policy did not require a statement under oath, Mitch's refusal to give any statement at all violated his obligation to "give evidence." Cf. MetLife Auto. & Home v. Cunningham, 797 N.E.2d 18, 22 (Mass. Ct. App. 2003) ("The Belands first claim that the policy did not

17

require an examination under oath and, consequently, that Cunningham's assertion of his Fifth Amendment rights during the course of the examination was of no consequence. That is simply a non sequitur. Cunningham did not object to providing information under oath; he more broadly objected to providing any information in any form. The fact that he executed that objection during an examination under oath was a mere happenstance.").

C.

Miller also contends that Augusta Mutual breached its duty to defend Mitch because it did not provide a separate attorney for him when he was brought in to give a statement under oath. According to Miller, this breach by Augusta Mutual rendered irrelevant Mitch's subsequent breach of his duty to cooperate. Again we disagree. Through the policy, Augusta Mutual had a contractual duty to defend the Luttrells, including Mitch, against claims by third parties. The statement under oath, however, was part of Augusta Mutual's internal investigation of the incident, and Augusta Mutual had no contractual obligation to provide Mitch with an attorney in connection with the company's own investigation of the shooting. Augusta Mutual's duty to defend thus was not triggered by the taking of the statement under oath.

18

Finally, Miller argues that Augusta Mutual was obligated to inform Mitch when he gave his statement that the assertion of his Fifth Amendment rights would relieve Augusta Mutual of its duty to indemnify or defend him. Miller does not contend that any policy provision required Augusta Mutual to inform Mitch of the contractual consequences of his impending breach of contract, nor does she point to any Virginia law that imposes such a requirement. Instead, she contends that the requirement is simply a "matter of good conscience, fair dealing, public policy, and pure equity." Brief of Appellant at 28.

It is not the place of a federal court sitting in diversity to create new law based on our view, or a litigant's view, of the commands of good conscience or fair dealing. Instead, our role is to apply the governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue. See, e.g., Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002). Given the absence of any authority for Miller's argument either in the language of the policy or the requirements of Virginia law, we reject her claim that Augusta Mutual was required to inform Mitch about the consequences of asserting his Fifth Amendment rights.[8]

_____

[8]In any event, we note that Augusta Mutual consistently reminded the Luttrells of their duty to cooperate, see J.A. 432, 434, and that shortly before the statements-under-oath were taken,

V.

To summarize, we conclude that Miller had standing in her own right to maintain this declaratory judgment action against Augusta Mutual. The district court's decision to dismiss Mitch from the action therefore did not deprive the court of subject matter jurisdiction over Miller's declaratory judgment claim. On the merits of Miller's claim, we agree with the district court that Mitch breached his duty of cooperation and that Augusta Mutual was therefore relieved of its duties under the policy.

Accordingly, the district court's order granting summary judgment in favor of Augusta Mutual is affirmed.

AFFIRMED

---

Augusta Mutual specifically advised Mitch and his parents of the consequences of a failure to cooperate. See J.A. 416-17.