COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, O'Brien and Senior Judge Frank
Argued by teleconference

PUBLISHED

MATTHEW THOMAS CONLEY

OPINION BY
v.      Record No. 1510-19-2          JUDGE MARY GRACE O'BRIEN
JULY 21, 2020
BRENDA LYNN BONASERA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
L.A. Harris, Jr., Judge

Jacqueline W. Critzer (Bowen Ten Cardani, PC, on brief),
for appellant.

Sarah J. Conner (Rick A. Friedman, II; Lindsay G. Dugan;
Friedman Law Firm, P.C., on brief), for appellee.


Matthew Thomas Conley moved to terminate his court-ordered monthly support obligation

to his former wife, Brenda Lynn Bonasera, pursuant to Code § 20-109(A).  Following a hearing, the

court found, by clear and convincing evidence, that Bonasera cohabited in a relationship analogous

to marriage for a period exceeding one year.  The court reduced the monthly payment, but held that

termination of spousal support was unconscionable.  Conley assigns error to the court's

unconscionability finding and its subsequent failure to terminate his support obligation.  He also

challenges the court's denial of his request for attorney's fees and costs.  For the following reasons,

we reverse the court's award of spousal support, but affirm its denial of Conley's attorney's fees and

costs.

BACKGROUND

The parties married on August 25, 2001, and divorced on July 15, 2016.  Their marital

property included ownership interest in three window installation franchises located in Virginia,

New York, and Colorado. In determining equitable distribution, the court awarded Conley ownership interests in the window installation businesses in New York and Colorado, with a buy-out to Bonasera for her shares. The court took no action concerning the Richmond business, known as Window World of Richmond, where both parties were employed in July 2016. The parties each owned 25% of the business; other investors controlled the remaining 50%.

At the time of the divorce, the court found that Bonasera's annual salary was $31,200 and Conley's salary was "approximately" $600,000, although it was "difficult to determine and varies from year to year because of the business cycle and distribution from his companies." In the divorce decree, the court awarded Bonasera permanent spousal support of $13,500 a month. Conley subsequently acquired an additional 50% ownership interest in Window World, giving him 75% ownership in the business. Bonasera retained 25% ownership.

On January 16, 2018, pursuant to Code § 20-109(A), Conley filed a motion to terminate or reduce his spousal support due to Bonasera's continued cohabitation in a relationship analogous to marriage for a period exceeding one year. As an alternative ground, Conley alleged a material change in income for both parties under Code § 20-109(B). In response, Bonasera filed a motion to increase spousal support on the ground that Conley's income had increased substantially after he acquired additional ownership interest in Window World.

At a March 11, 2019 hearing, Conley presented evidence that Bonasera had been residing with D.P. since February 2018 in the former marital home. Bonasera and D.P. had a child together, born in April 2018, who lived with them. The court also considered other evidence of Bonasera and D.P.'s cohabitation.

Conley presented additional evidence concerning the parties' current financial situation. Previously, when Conley owned only 25% of Window World, he and his business partner determined the amount of distributions from the company. However, when Conley became the

majority shareholder in 2018, he acquired sole responsibility for making distributions to himself and Bonasera. Conley explained that he determined the timing and amount of distributions by considering the "[e]conomic climate, season, . . . marketing decisions [and] forecast expenses of the company."

Conley acknowledged that his total income for 2016 was $666,492, an increase from 2015. He presented his 2017 tax return, reflecting a reduction in income, which he attributed to a downturn in the business. Conley also testified that he earned additional income by liquidating "defective or mis-measured" windows purchased by Window World. He did not give Bonasera any of those proceeds because he did not consider them "company income;" the company had already been compensated for the windows from deductions in the salesperson's commissions. Additionally, Conley, who has remarried, has use of a company car and credit card, unlike Bonasera. The court determined that Conley's 2017 income was approximately $500,000, based on his salary and added business benefits.

The court found that Bonasera's 2017 income was $191,200, before spousal support. Her income was comprised of disbursements and her salary from the company.

Bonasera acknowledged that when the final decree was entered, the court calculated spousal support by considering only her wage income, not the amount she received from company distributions. According to Bonasera, in 2014 and 2015, before the parties were divorced, Conley "intercepted" her distributions. She stated that during 2015, she did not receive any distributions because Conley "took a shareholder allowance out for [approximately] $56,000." Between 2016 and 2018, Bonasera received an annual salary of $31,200 from Window World. She also received company distributions during that time period: in 2016, Bonasera received distributions of approximately $137,000 at the end of the year, in 2017 and 2018, she received distributions nearly every month totaling $160,000 and $144,750, respectively. Bonasera asserted that she began

- 3 -

receiving distributions "when [she] started receiving spousal support because [Conley] had to get that income from the company and . . . he can't take unequal shareholder distributions."

Bonasera stated that she cannot depend on her distributions because she is uncertain of the amount she will receive each year. She expressed concern that Conley could "cut off" disbursements from the business, "and there's nothing [she] can do aside from [initiating litigation, which would involve an] exhaustive or astronomical amount of attorney's fees." Bonasera stated that if she did not receive distributions, "[t]hat's when the [financial] problems will happen." She testified that if the court terminated spousal support, she would likely have to sell her home and her vehicle and would be unable to pay her "astronomical" legal expenses.

On cross-examination, Bonasera agreed that she told a psychologist who conducted the parties' custody evaluations that she could manage financially without spousal support. However, at trial she stated that the psychologist was not aware of all of Conley's business dealings.

Despite continuing to receive her salary, Bonasera has not conducted day-to-day work at Window World since March 2014 because Conley "got unbearable to be around." Before then, she worked approximately forty hours a week handling "all the inside operations from day to day." The CPA who provides outside bookkeeping for Window World testified that Bonasera's access to the company's daily financial records ended when Conley became the majority shareholder.

The court concluded that Conley met his burden of establishing that Bonasera was cohabiting in a situation analogous to marriage and noted that D.P. "writes checks from [Bonasera's] account and uses her credit cards." However, it determined that termination of spousal support would be unconscionable. The court found that the parties enjoyed a high standard of living during the marriage, and Conley's earning capacity was "in the past and present . . . far great[er] than that of [Bonasera]." The court also noted Conley's "high levels of spending that are derived from his benefits from the business that are not enjoyed" by his former wife. The court reduced

spousal support to $4,000 a month effective February 1, 2018, and ordered that Bonasera repay

$123,500 to Conley in thirty monthly installments. The court declined to award attorney's fees and

denied a subsequent motion to reconsider.

ANALYSIS

Conley assigns error to the court's failure to terminate Bonasera's spousal support pursuant

to Code § 20-109(A) based on her cohabitation with D.P. Conley also contends that he was entitled

to recover his attorney's fees.

A. Spousal Support

Code § 20-109 addresses modification and termination of spousal support. It provides, in

relevant part, as follows:

> Upon order of the court based upon clear and convincing evidence
> that the spouse receiving support has been habitually cohabiting
> with another person in a relationship analogous to a marriage for
> one year or more . . . the court shall terminate spousal support and
> maintenance unless . . . the spouse receiving support proves by a
> preponderance of the evidence that termination of such support
> would be unconscionable.

Code § 20-109(A). The court found that Bonasera had been "habitually cohabiting with [D.P.] in

a relationship analogous to a marriage for one year," a conclusion clearly supported by the

evidence. She does not contest the finding on appeal. Conley argues that therefore, based on a

plain reading of Code § 20-109(A), the court erred by merely reducing, not terminating,

Bonasera's spousal support. He disputes the court's decision that termination of spousal support

would be unconscionable. He contends that his argument is supported by evidence showing that

Bonasera's income of $191,200 sufficiently met her needs and that she financially supported

D.P.

Although factual findings made by a court in support determinations are entitled to great

deference and will be overturned only for an abuse of discretion, we review statutory

determinations *de novo*. Luttrell v. Cucco, 291 Va. 308, 313-14 (2016). See also Ragland v. Commonwealth, 67 Va. App. 519, 530 (2017) ("[T]o the extent the appellant's assignment of error requires 'statutory interpretation, it is a question of law reviewed *de novo* on appeal.'" (quoting Grimes v. Commonwealth, 288 Va. 314, 318 (2014))). "[The] *de novo* standard of review applies to determining the proper definition of a particular word in a statute." Miller v. Commonwealth, 64 Va. App. 527, 537 (2015).

"[W]ords of a statute should receive their ordinary acceptation and significance, where such construction is consonant, and not at variance, with the purpose of the statute." Luttrell, 291 Va. at 314 (quoting Rountree Corp. v. Richmond, 188 Va. 701, 712 (1949)). This Court previously stated that "[t]he public policy clearly declared by Code § 20-109 . . . is that spousal support does not survive the recipient's remarriage." Hardesty v. Hardesty, 40 Va. App. 663, 668 (2003) (*en banc*). Code § 20-109(A) furthers that purpose by requiring termination of spousal support not only for a party who remarries, but for one who cohabits in a relationship analogous to marriage for greater than one year. The statute provides two exceptions: if the parties contractually agreed to continue spousal support or if termination of support would be "unconscionable."

This Court has not had occasion to interpret the term "unconscionable," as used in Code § 20-109(A). The issue of unconscionability primarily has arisen in the context of a challenge to a property settlement or marital agreement. With the exception of provisions related to custody and support of children, such "agreements are contracts subject to the same rules of formation, validity, and interpretation as other contracts." Allen v. Allen, 66 Va. App. 586, 595 (2016) (quoting Bergman v. Bergman, 25 Va. App. 204, 211 (1997)); see Cabral v. Cabral, 62 Va. App. 600, 609 (2013). According to contract law principles, these agreements may be set aside for fraud or unconscionability in certain circumstances.

"Historically, a bargain was unconscionable in an action at law if it was 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" Derby v. Derby, 8 Va. App. 19, 28 (1989) (quoting Restatement (Second) of Contracts § 208 comment b). "[U]nconscionability is . . . concerned with intrinsic fairness . . . in relation to all attendant circumstances, including the relationship and duties between the parties." Id.

> When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of the mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative.

Id. at 28-29 (quoting Pomeroy, Equity Jurisprudence § 928 (5th ed. 1941)).

In Derby, we affirmed the court's determination that a written property settlement agreement, entered pursuant to Code § 20-109.1, should be set aside on the ground of unconscionability. Id. at 33. The agreement, including the deed that husband agreed to sign, "conveyed to [wife] the entire value of essentially all of the valuable real estate which the parties owned." Id. at 23. Husband executed the document without the presence of his counsel, and the court accepted husband's testimony that he signed the agreement because wife agreed to return home if he did so. Id.

We concluded the "trial court's finding of unconscionability on its face was supported by the evidence." Id. at 31. Wife received "essentially everything [husband] had ever earned and accumulated in his lifetime for [wife's] ephemeral promise . . . to permit him to reside in one of the apartment units in the building." Id. at 30-31. The agreement also provided that husband waived his right to spousal support, while wife retained hers. Id. at 31. Husband's "emotional weakness,"

in combination with wife's "concealment and misrepresentation about her conduct and intentions," contributed to the court's finding that the agreement was unconscionable. Id. at 33.

Similarly, in Sims v. Sims, 55 Va. App. 340, 353-54 (2009), we affirmed a finding that a settlement agreement was unconscionable where the "evidence established not only a gross disparity in the division of assets but also infirmity and pecuniary necessities." Wife, who had a third-grade education, was married to husband for thirty-eight years, suffered from numerous health problems, and was receiving food stamps at the time of the evidentiary hearing. Id. at 352. Although

> husband did not engage in any *overt* overreaching or oppressive conduct, his act of entering into a contract with wife in which she waived spousal support and relinquished to him almost 100% of the marital estate-including the marital residence, all retirement benefits and deferred compensation-literally left her penniless with no practical means for supporting herself.

Id. at 353. We held that "gross disparity *in conjunction with* pecuniary necessity on the part of the disadvantaged spouse establishes unconscionability." Id. at 350. Cf. Galloway v. Galloway, 47 Va. App. 83, 86-96 (2005) (finding an agreement awarding husband approximately 94% of the marital assets not unconscionable where the wife did not suffer from any disability, had inherited assets, and could obtain a job as a secretary).

Here, the court found that Window World "provides the basis of the income for both parties." Because of the "change in the ownership of the business [that] now provides . . . Conley with 75% ownership as opposed to the 25% ownership at the time of the divorce, [Conley] controls the amount of all monies paid to both himself and . . . Bonasera." Despite the evidence showing that Conley determines the timing and amount of the distributions, he cannot take a distribution without giving Bonasera one. Further, Bonasera's fears that Conley will suspend distributions are speculative. She admitted that she has been receiving distributions since the end of 2016. The distributions have been made on an almost monthly basis since 2017. Bonasera also receives an

annual salary of $31,200, despite not working at the business. There was no evidence that Conley controls the amount of her salary or that it is potentially subject to being eliminated.

Bonasera's financial situation differs starkly from the facts of prior cases where marital agreements were found unconscionable. Unlike the termination of spousal support in Derby and Sims, termination of spousal support in this case would not leave Bonasera destitute. Bonasera regularly receives an annual salary of $31,200, in addition to distributions totaling approximately $137,000 in 2016 and $160,000 for 2017; her spousal support is not a "pecuniary necessity." Sims, 55 Va. App. at 350. She is not disabled and has work experience "handl[ing] all the inside operations [of a company] from day to day, managing the employees, unloading window trucks, scheduling, [and] dealing with customers."

The court noted in its final order that Conley "continues to enjoy a high standard of living after his remarriage that includes trips, vacations, and other high levels of spending that are derived from his benefits from the business that are not enjoyed by" his former wife. However, any discrepancy in the benefits the parties derive from their interests in a company as majority and minority stockholders is a matter to be addressed in business litigation, such as a shareholder derivative suit, not an issue to be resolved through spousal support. "[T]he amount of support is based on current needs of the spouse . . . and the ability of the other spouse . . . to pay from current assets." Williams v. Williams, 4 Va. App. 19, 24 (1987). Bonasera did not present any evidence that her choice to cohabitate with D.P. in a situation analogous to marriage was a decision made due to her necessitous circumstances. On the contrary, the evidence established that D.P. moved into the former marital home, wrote checks from Bonasera's account, used her credit cards, and the couple had a child together. The evidence did not establish gross disparity between the parties in conjunction with Bonasera's financial need in light of Conley's ability to pay. Therefore,

termination of Bonasera's spousal support was not unconscionable and the court erred in awarding Bonasera continuing spousal support.

## B.  Attorney's Fees

Conley appeals the court's denial of his request for an award of attorney's fees and costs. "Whether to award attorney's fees 'is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion.'" Kane v. Szymczak, 41 Va. App. 365, 375 (2003) (quoting Northcutt v. Northcutt, 39 Va. App. 192, 199-200 (2002)).  "[T]he key to a proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record."  McGinnis v. McGinnis, 1 Va. App. 272, 277 (1985).

Conley argues that he was entitled to recover his attorney's fees because he prevailed on his motion at trial.  Although Code § 20-99(6) authorizes a court to award fees "to either party as equity and justice may require," no statutory provision provides that a prevailing party is automatically entitled to recover attorney's fees in a motion to amend or terminate support.

Conley also asserts that Bonasera "unnecessarily and dramatically increased the cost of litigation by repeatedly denying that . . . D.P. lived in her home with her" and refusing to answer relevant interrogatory questions.  Although Conley prevailed on the contested cohabitation issue that Bonasera denied at trial, the record demonstrates lack of cooperation from both parties during discovery.  In particular, the court issued numerous rules to show cause against Conley for his failure to comply.  For these reasons, the court did not abuse its discretion in ordering each party to pay his or her own attorneys' fees and costs.

Both parties also seek attorneys' fees and costs on appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees expended on appeal is clear.  The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). Although we reverse the court's award of spousal support, this appeal was not frivolous in nature, and Bonasera did not continue to contest the cohabitation finding. Therefore, we deny both parties' requests for attorneys' fees and costs on appeal.

CONCLUSION

For the foregoing reasons, we find that under the facts and circumstances of this case, termination of spousal support to Bonasera is not unconscionable; accordingly, we reverse the court, vacate the award of $4,000 per month in spousal support to Bonasera, and remand the case for entry of an order consistent with this holding. We affirm the court's denial of Conley's attorney's fees and costs, and we decline to award either party fees or costs on appeal.

Affirmed in part, reversed in part, and remanded.