Garsh, E. Susan, J.
Dorchester Mutual Insurance Company (“Dorchester”), the plaintiff, moves for summary judgment on the counterclaims asserted by Erik Green (“Green”), one of the defendants. The counterclaims seek a declaratory judgment that Dorchester had a duty to defend and indemnify Damon Legeyt, a *263 co-defendant, and that Dorchester violated chapters 93A and 176D by not promptly responding to and settling Green’s claim. For the reasons that follow, Dorchester’s motion for summary judgment is DENIED.
BACKGROUND
The record, viewed in the light most favorable to Green, the party opposing the motion for summary judgment, reflects the following facts.
On March 2, 2004, Green, a police officer, took part in a traffic stop in Mashpee, Massachusetts. Damon Legeyt was a passenger in the stopped vehicle. After Green determined that there was a warrant outstanding for Damon Legeyt’s arrest, he informed Damon Legeyt that he was under arrest due to that warrant. Damon Legeyt then proceeded to push Green with his hands and run away from him. Green followed and sustained injuries while taking Damon Legeyt to the ground.
Damon Legeyt was twenty-three years old at the time of the incident.
Damon Legeyt’s father, the defendant Bruce Legeyt, had a policy of homeowners insurance with Dorches-ter that was in effect during the relevant time period (the “Policy”). The Policy defines the term “insured” as including the policyholder, Bruce Legeyt, as well as “residents” of his household who are his “relatives.”
In July of 2004, Dorchester received notice of Green’s claim. Green alleged that Damon Legeyt was covered by the Policy. That same month, Bruce Legeyt notified Dorchester of Green’s claim against Damon Legeyt promptly after being advised of Green’s claim against his son.
Dorchester interviewed Bruce Legeyt on August 11, 2004 and Damon Legeyt on November 20, 2004.[2] Neither interview was under oath. The interview with Damon Legeyt was recorded and lasted for one hour. He did not refuse to answer any questions.
On April 10,2006, Green forwarded a demand letter to Dorchester pursuant to chapter 93A. Thereafter, on April 26, 2006, Green contacted Dorchester regarding his claim, and Dorchester informed Green of the Policy limits.
On November 30, 2006, Dorchester filed the instant complaint for declaratory judgment against Bruce Legeyt, Damon Legeyt, and Green. The complaint alleges, inter alia, that by the time that it was able to speak with the Legeyts, their recollections of all pertinent events were vague and unclear; that Damon pled guilty to assault and battery on a police officer;[3] that Damon Legeyt used his father’s address for mail and other purposes because he was transient during the relevant period; that Bruce Legeyt would collect all mail addressed to Damon Legeyt and take it to Damon Legeyt’s grandfather’s home where Damon Legeyt would pick it up; that Bruce Legeyt has asserted that Damon Legeyt did not reside with him at the time of the incident; that, upon information and belief, Damon Legeyt resided with his girlfriend or his grandparents during the relevant time period; that the Legeyts failed to appear for twice-scheduled examinations under oath requested in October of 2006 and that Dorchester was prejudiced by their failure to have appeared; and that, as result of Green’s asserted claims against the Policy, an actual controversy has arisen between Dorchester and the defendants regarding Dorchester’s obligations to provide a defense and indemnity under the Policy.[4]
Count I of the complaint alleges that Damon Legeyt was not a resident of Bruce Legeyt’s household on March 2, 2004 and, accordingly, that the court should declare that Damon Legeyt was not an insured under the Policy, and that Dorchester has no duty to defend or indemnify him for the March 2, 2004 incident. Count II of the complaint alleges that the incident was not an “occurrence” as defined by the Policy; that any injuries caused by Damon Legeyt were intentionally inflicted and thus not covered by the Policy even if the incident were an “occurrence”; and, accordingly, that the court should declare that the March 2, 2004 incident was not an occurrence as defined by the Policy; that Dorchester has no duty to defend or indemnify any claims relating to the March 2, 2004 incident; that any injuries sustained by Green were the result of intentional acts and therefore excluded from the Policy; and that Dorchester has no duly to defend or indemnify Damon Legeyt against such claims. Count III of the complaint alleges that Dor-chester was prejudiced by delay in notification of the incident and the Legeyts’ failure to cooperate; that the Legeyts have made material misrepresentations of fact; that their breach of the Policy relieves Dorchester of any obligation to provide a defense or indemnity under the Policy; and accordingly, that the court should declare that Dorchester has no duty to defend or indemnify Damon Legeyt for any injury claims arising out of the alleged March 2, 2004 incident.
In Green’s answer to the complaint, he asserted two counterclaims. Count I requests eight declarations from the court, all concerning his contention that Dorchester owes Damon Legeyt a duty to defend and a duty to indemnify. Count II alleges that Dorchester violated G.L.cc. 93A and 176D for failing to promptly respond to and settle Green’s claim.
Whether Damon Legeyt lived with his father on March 2, 2004 is a disputed issue of fact.[5]
The Policy required each insured to cooperate with Dorchester in the investigation, settlement or defense of any claim or suit. The Policy’s only express requirement that an insured submit to an examination under oath is found in the section of the Policy dealing with property, not personal liability, claims.
Dorchester scheduled Examinations Under Oath of both Bruce Legeyt and Damon Legeyt on October 11, 2006 and October 27, 2006, twenty-seven months *264 after receiving notice of the claim. Despite receiving notice, Bruce Legeyt did not appear on either date and did not contact Dorchester regarding any reason for not appearing. Damon Legeyt also did not appear. There is no evidence that Damon Legeyt had actual notice of either scheduled examination.
Damon Legeyt was served with a true and attested copy of the summons, complaint, and attached documents on December 14, 2006. Service was made on him while he was confined at the Barnstable House of Correction. Dorchester did not seek to take Damon Legeyt’s deposition while he was in custody.
Damon Legeyt did not answer the complaint. Pursuant to Mass.R.Civ.P. 55(a), Damon Legeyt was defaulted on April 9, 2007 for failure to answer the complaint.
Dorchester then moved for separate and final judgment against Damon Legeyt. Green opposed the motion for separate and final judgment on the grounds that the substantive issues of duty to defend and indemnification were identical to those at the core of Green’s counterclaims. Following argument on the motion, on August 13, 2007, the court (Sanders, J.) signed the Rule 55(b)(2) order for judgment proffered by Dorchester. The order recites that, since it appears that Damon Legeyt did not timely respond to the complaint and initiated no proceeding after the default was entered, “it is hereby ordered and adjudged that: a) Dorchester is not obligated to defend Damon Legeyt in any action arising out of or in connection with the alleged altercation with defendant Eric Green on or about March 20, 2004; and b) Dorchester is not obligated to indemnify defendant Damon Legeyt for any losses or judgments against him arising out of or in connection with the alleged altercation with defendant Eric Green on or about March 2, 2004.” On the same date, the court allowed the motion for separate and final entry of judgment, endorsing that motion as follows: “Allowed. There is no just reason for delay; in fact, there is every reason to have this judgment entered now.”
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party has established that it is entitled to judgment as a matteroflaw. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the moving party has established the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat the motion for summary judgment. Id. at 17.
Count I — Declaratory Judgment A. Issue Preclusion
Dorchester contends that the separate and final judgment entered against Damon Legeyt in this action resolves Count I of Green’s counterclaims because this court already has decided all the issues raised by that counterclaim. It maintains that, because a judgment was rendered against Damon Legeyt, judgment must be entered in Dorchester’s favor on the counterclaim for declaratory judgment as well.
The thrust of Dorchester’s argument is that the rights of an injured claimant within the procedural context of a declaratory judgment action are wholly derivative of the rights of the co-defendant insured and that, therefore, a default judgment against the insured must lead to a judgment against the injured party. The court deemed the facts alleged in the complaint to be true only because Damon Legeyt did not answer the complaint. There was no evidentiary hearing, and Green had no opportunity to contest the facts deemed true by virtue of Damon Legeyt’s default.
The entry of the separate and final judgment against Damon Legeyt is not binding upon Green because Dorchester and the non-defaulting parties did not litigate any of the factual issues. Cf. Treglia v. MacDonald, 430 Mass. 237, 241 (1999) (preclusive effect should not be given to issues or claims that were not actually litigated in a prior action); Motor Club of America Ins. Co. v. McCroskey, 9 Mass.App.Ct. 185, 188 (1980) (entry of judgment in declaratory judgment action finding that liability insurer was under no obligation to provide indemnification to any injured party did not impair or impede ability of non-party to protect its interest in the future); Restatement (Second) of Judgments §27 comment e, at 257 (1982) (In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated).
General Laws c. 231 A, §8 requires the joinder of all “parties who have or claim any interest which would be affected by the declaration” and further provides that “no declaration shall prejudice the rights of persons not parties to the proceedings.” An insurer “can, by certain steps, get clear of the duty [to defend a third-party complaint] from and after the time when it demonstrates with conclusive effect on the third party that as matter of fact — as distinguished from the appearances of the complaint and policy — the third party cannot establish a claim within the insurance.” Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 323 (1983).
A declaratory judgment action, in which all interests are represented, is one means to guard against the possibility of inconsistent adjudications. Id. The insurer cannot achieve that purpose, however, if the injured party joined by the insurer loses its ability to protect its interest once the co-defendant tortfeasor defaults and judgment is entered against the tortfea-sor. Accordingly, courts have held that when an in *265 sured party is defaulted in a declaratory judgment action brought by an insurer, the injured party is entitled to remain in the suit and defend the action brought by the insurer. See Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 353 (3d Cir. 1986) (applying both federal and Pennsylvania law); Hawkeye-Security Ins. Co. v. Schulte, 302 F.2d 174, 177 (7th Cir. 1962) (finding it “anomalous” to allow insurer to join injured party and then deny that party “the right to participate in the controversy”); Vermont Mut. Ins. Co. v. Everette, 875 F.Sup. 1181, 1186 (E.D.Va. 1995) (applying Virginia law).[6]
At this stage, Dorchester has not established that Green has no claim within the Policy. “(U]ntil there is an unalterable determination as to the nature of the underlying claim, any declaration of rights concerning the insurer’s duty to defend cannot be conclusive.” Lumbermans Mut. Cas. Co. v. Belleville Indus., Inc., 407 Mass. 675, 686 (1990). The declaratory judgment that has entered is not such an unalterable determination. Dorchester, therefore, is not entitled to summary judgment in its favor on Count I of the counterclaim on the basis that the default judgment is determinative.
B. Standing
Dorchester also asserts that Count I cannot survive because an injured party, made a defendant in a declaratory judgment suit by an insurer, has no standing to bring a counterclaim for declaratory judgment. To be entitled to seek relief under G.L.c. 231A, a plaintiff must show both the existence of an actual controversy and legal standing.[7] United Oil Paintings, Inc. v. Commonwealth, 30 Mass.App.Ct. 958, 959 (1991).
Although Massachusetts appellate courts do not appear to have addressed the issue of an injured party’s standing to seek a declaratory judgment against a tortfeasor’s insurer,[8] the Supreme Judicial Court has stated that an injured party’s interest in the policy of another originates with the accident. Fallon v. Mains, 302 Mass. 166, 168 (1939). In Fallon, the Court stated that the “plaintiffs right to have recourse to the policy came into existence upon the occurrence of the accident. . .” Id. See Goldstein v. Bernstein, 315 Mass. 329, 332 (1943) (“Upon the happening of the accident, .. . the plaintiffs acquired a beneficial interest in the proceeds of the policy and the right, if judgments were entered in their favor in the tort actions, to enforce in their own names the satisfaction of their judgments out of the indemnity furnished to the insured by the company”).
Several courts that have considered whether an injured party may seek declaratory relief against another’s insurer have held that an injured party’s interest in the tortfeasor’s insurance policy is sufficiently present or immediate, once the injury has been sustained, to allow the injured party to seek declara-toiy relief.[9] E.g., Miller v. Augusta Mut. Ins. Co., 157 Fed. Appx. 632, 637 n.5 (4th Cir. 2005) (unpublished) (noting that Virginia law permits an injured party to bring a declaratory judgment action against the tortfeasor’s insurer before obtaining a judgment against the tortfeasor even though it may not bring a direct action against an insurer before judgment has entered); Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 682 (7th Cir. 1992) (holding that injured party has a legally protectable interest in tortfeasor’s insurance policy after injury but before judgment sufficient to allow claimant to bring an action seeking a declaration that the insurer is liable to indemnify its insured, reasoning: “Must the victim go to the expense of prosecuting to judgment a tort suit that will be completely worthless unless the policy is declared valid?”); Eureka Fed. Savings & Loan Ass’n v. American Cos. Co., 873 F.2d 229, 231-32 (9th Cir. 1989) (to conclude that injured party does not have a sufficient immediate and real interest to warrant the issuance of a declaratory judgment would prevent the parties from settling the underlying action prior to a prolonged and costly trial and would undercut California’s law obliging the insurer to make a good faith attempt to settle claims); Howard v. Montgomery Mut. Ins. Co., 805 A.2d 1167, 1176 (Md.App. 2002) (error to grant summary judgment dismissing declaratory judgment action on ground that tort claimant lacks standing to bring declaratory judgment action against tortfeasor’s insurer); Community Action of Greater Indianapolis, Inc. v. Indiana Farmers Mut. Ins. Co., 708 N.E.2d 882, 885 (Ind.Ct.App. 1999) (injured victim has legally protectable interest in policy before reducing tort claim to judgment that supports standing to sue tortfeasor’s insurer under Indiana’s Declaratory Judgment Act); National Sec. Fire & Cos. Co. v. Poskey, 828 S.W.2d 836, 838 (Ark. 1992) (declaratory judgment action as to insurer’s coverage and defense obligations is not barred by law that injured party cannot sue insurer directly before obtaining judgment).[10] Cf. Maryland Cos. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) (declaratory judgment action by insurer against insured and injured third party stated a claim against injured party because insurer and injured party had “adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment”).
In sum, in view of the fact that, at the time of his injury, Green acquired a beneficial interest in the Policy, in the context of this declaratory judgment action brought by Dorchester naming Green as a defendant, Green is entitled to maintain a counterclaim for declaratory relief.[11]
C. Law of the Case
The principle of “law of the case” means that a court is not required to reconsider an issue in a case that has already been decided. See Peterson v. Hopson, 306 Mass. 597, 599 (1940). Although an issue, once decided, need not be reconsidered, a court retains the *266 authority to do so. Commonwealth v. Gross, 447 Mass. 691, 693 n.2 (2006). No issue in this case has been decided vis á vis Green. To the extent that Dorchester assumes that the court has already ruled, by its allowance of Dorchester’s motion for separate and final judgment, that the default judgment is binding upon Green, that assumption is unwarranted.
D. Damon Legeyt’s Status as Household Member
In arguing that it is entitled to summary judgment on the basis that Damon Legeyt was not a household member, Dorchester relies solely on Bruce Legeyt’s failure to respond to requests for admissions and his answer. The answer is not under oath. Neither the answer nor Bruce Legeyt’s failure to respond are binding upon Green. Whether Legeyt was a member of his father’s household at the relevant time is both material and disputed.
E. Alleged Breach of Policy
Dorchester’s argument that the Legeyts’ failure to submit to an examination under oath constitutes a material breach of the Policy ignores the fact that the Policy contains no pre-condition to coverage that the insured so submit. The only reference to submission to an examination under oath being required is found in the recitation of the insured’s duties after “a loss to covered property.” Accordingly, Mello v. Hingham Mut. Fire Ins. Co., 421 Mass. 333 (1995), upon which Dorchester relies, is inapposite.
Dorchester’s alternative argument that the Legeyts breached the duty to cooperate clause by failing to appear for their examination under oath fails as well. There is no evidence that Damon Legeyt had notice of the examination. Both Legeyts did consent to be interviewed and were interviewed by Dorchester in 2004. The examinations under oath were not scheduled until late in 2006. This is not a case where memories may have deteriorated because of an insured’s failure to appear for an examination under oath because it was Dorchester that waited over two years to schedule them. Dorchester then had the opportunity to depose the Legeyts in this action filed shortly after the scheduled examinations under oath. The facts in the instant case do not resemble the fact pattern in MetLife Auto & Home v. Cunningham, 59 Mass.App.Ct. 583 (2003), cited by Dorchester in support of its contention that it is entitled to disclaim coverage by virtue of the Legeyts’ failure to have appeared for an examination under oath. In that case, the insured asserted his privilege against self-incrimination and refused to answer any questions either in response to queries from the insurer or in response to discovery in both a declaratory judgment action and in the underlying tort action. Not surprisingly, the Court found that providing the insurer with information about how the incident occurred was at the heart of the insured’s duty to cooperate, particularly when that information was peculiarly within his knowledge, and that his manifest and persistent failure to provide that information when asked to do so in a number of different ways and at several different times constituted a breach of the policy. Id. at 587-88. There has been no such flagrant refusal here to respond to the insurer. The Court in Cunningham did not hold that every failure to appear for a examination under oath automatically violates the duty to cooperate clause. To the contrary, it stated that the insured had not objected to providing information under oath; “he more broadly objected to providing any information in any form. The fact that he executed on that objection during an examination under oath was a mere happenstance.” Id. at 589.
Dorchester has not made the required affirmative showing of actual prejudice resulting from the failure of the Legeyts to appear for an examination under oath. “[A] showing of prejudice is not, and should not be, easily made . . .” Id. at 591.
Count II — Chapters 93A and 176D
On this record, Dorchester has not established that its actions do not rise, as a matter of law, to any unfair or deceptive acts or practices. The declaratory judgment complaint by Dorchester against Bruce Legeyt and Green has not yet been resolved. The insurer primarily relies on Bruce Legeyt’s answer and admissions filed in this action, several years after the claim was filed, for the proposition that his son was not a member of his household. Bruce Legeyt’s statement to Dorchester made shortly after the claim was filed is not part of this record. Discovery is ongoing.
ORDER
For the reasons set forth above, it is hereby ORDERED that Dorchester Mutual Insurance Company’s motion for summary judgment on the counterclaims brought by Erik Green be and hereby is DENIED.

Dorchester’s assertion in its Statement of Material Facts that it had obtained information during an investigation that called into question the residence of Damon Legeyt during the relevant time period is unsupported by anything other than Dorchester’s own self-serving statement, not under oath, to this effect in its May 15, 2006 response to Green’s chapter 93A demand letter. Accordingly, this fact is not undisputed.

The conviction for assault and battery upon a police officer does not necessarily relate to the touching that forms the basis of Green’s claim. Green states, under oath, in his responses to Dorchester’s Requests for Admissions, that Damon Legeyt pushed him with his hands before running away and that he was injured, only later, when taking Damon Legeyt to the ground. He denies, under oath, that the criminal charge related to the action that caused his injuries. Even if the plea related to the acts that caused Green’s injuries, it would not be conclusive against Green. Aetna Casualty & Surety Co. v. Niziolek, 395 Mass. 737, 747 (1985) (a guilty plea constitutes “an admission of the material facts alleged in the complaint or indictment and insofar as it amounts to an admission of facts material in the trial of a civil case in which the person so pleading is a party, it is admissible as evidence against him”).

None of the assertions in the complaint, which is not signed under oath, are admissible against Green for the truth of the matters asserted therein.

Dorchester relies on Bruce Legeyt’s answer to the complaint in support of the assertion that Damon Legeyt did not live with his father on March 2, 2004. The statements made by Bruce Legeyt in his answer are not under oath and do not bind Green. Similarly, Bruce Legeyt’s failure to have responded to Dorchester’s request for admissions does not make any “deemed admitted” responses binding upon Green. A statement deemed admitted is not equivalent to an affidavit when used against a party not responsible for responding to the admissions. See Mass.R.Civ.P. 36(b) (admissions are conclusively binding on responding party). Dorchester did not proffer any admissible evidence concerning Damon Legeyt’s residence on March 2, 2004, a fact it nevertheless seeks to establish as undisputed. Green references various official records and statements by Damon Legeyt that would indicate he did, in fact, reside at his father’s address. Because Green is not cross-moving for summary judgment on his counterclaims, it is not material whether such records or statements would constitute admissible, competent evidence to prove that Damon Legeyt did reside at his father’s address.

See also Sagamore Ins. v. Deming, 2008 Conn.Super. LEXIS 2050, at *7 (Conn.Super.Ct. Aug. 6, 2008) [46 Conn. L. Rptr. 137] (rejecting proposition that an insured’s default for failure to plead prevents the injured parly, a defendant in the insurer’s declaratory judgment action, from moving for summary judgment).

Controversy and standing do not, however, mean that issuance of a declaratory judgment is necessarily warranted. A court may refuse to enter a declaratory judgment when it “would not terminate the uncertainty or controversy giving rise to the proceedings or for other sufficient reasons.” G.L.c. 231A, §3. For example, a declaratory judgment may not be appropriate if the coverage turns upon facts that will be determined in the underlying tort action, such as whether the alleged injury resulted from a negligent or intentional act.

It is clear that, in the absence of a final judgment against Damon Legeyt, Green has no right to reach and apply the Policy under G.L.c. 214, §3(9) and c. 175, §113. Rogan v. Liberty Mut Ins. Co., 305 Mass. 186, 188 (1940).

But see Cross v. Occidental Fire & Cas. Co., 347 F.Sup. 342, 343-44 (W.D.Okla. 1972); Lang v. Hanover Ins. Co., 820 N.E.2d 855, 858 (N.Y. 2004); Grange Ins. Ass’n v. Hoehne, 56 P.3d 111 (Colo.App. 2002); Maness v. Alabama Farm Bureau Mut. Cos. Co., Inc., 416 So.2d 979, 981-82 (Ala. 1982). Accord Ioannou v. Merrimack Mut. Fire Ins. Co., No. 995902J, 2001 Mass.Super. LEXIS 623, *4 (Mass.Super.Ct. Dec. 20, 2001) (Giles, J.) (holding that a tort claimant is not entitled to declaratory relief because he “has no interest or right in the insurance contract” between the insured and its insurer).

See also Allan D. Windt, Insurance Claims and Disputes: Representation of Insurance Companies & Insureds §8:8, at 8-25 (5th ed. 2007) (stating that just as an insurer may bring a declaratory judgment action against an injured party before that party obtains a favorable judgment, conversely, “the injured party may, despite the absence of a judgment against the insured, be able to bring a declaratory judgment action against the insurance company”); Steven Plitt et al., Couch on Insurance §232:67, at 232-91 (3d ed. 2000) (“An injured party may seek a declaratory judgment against a liability insurer before the insured tortfeasor’s underlying liability has been determined, when the two issues are independent and separable”).

The counterclaim for declaratory judgment pertains both to the insurer’s duty to indemnify and to its independent duty to defend. Even if Green has no standing to seek declaratory relief with respect to Dorchester’s duly to defend, Dorchester would not be entitled to the summary judgment it seeks dismissing the counterclaim. The court does not reach the narrower issue of Green’s standing to seek declaratory relief with respect to the duty to defend because Dor-chester did not move for partial summary judgment and this issue was not properly briefed by Dorchester. The cursory, conclusory argument made in one three-sentence paragraph of its eighteen-page Memorandum of Law did not comply with Superior Court Rule 9A because Dorchester provided no supporting authority for its contention that Green lacks standing to obtain declaratory relief with respect to the duty to defend or even any legal reasoning.