## VULCAN MATERIALS COMPANY

## V.

## BOARD OF SUPERVISORS OF CHESTERFIELD COUNTY, ET AL.

Record No. 930764

June 10, 1994

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy and Keenan, JJ.,
and Poff, Senior Justice

*G.H. Gromel, Jr. (Michael R. Shebelskie; Hunton & Williams,* on briefs), for appellant.

*Stylian P. Parthemos, Senior Assistant County Attorney (Steven L. Micas, County Attorney; Michael S.J. Chernau, Assistant County Attorney,* on brief), for appellees.

JUSTICE COMPTON delivered the opinion of the Court.

The narrow question we decide in this land use controversy is whether the trial court erred in ruling that a landowner was precluded from mounting a court challenge to the authority of a county governing body to act in a zoning matter because the landowner had failed to exhaust administrative remedies before resorting to court action. The issue is a pure question of law; none of the relevant facts is disputed.

In May 1971, appellee Board of Supervisors of Chesterfield County issued a conditional use permit to allow quarrying on a 186-acre tract of land in rural Chesterfield County. The permit was granted subject to approval of a so-called "plan of operation" for the quarry.

In 1972, as authorized by a county ordinance effective at the time, the Board approved the plan of operation. The plan of operation, as the name implies, set forth regulations that were to apply to the quarry operations. The regulations dealt with noise, dust, vibrations, location of excavations, quality of roadways leading to and from the quarry, hours of operation and hours of blasting, fencing, and erosion control.

Appellant Vulcan Materials Company acquired the tract in 1972. Pursuant to the use permit and the plan of operation, Vulcan commenced quarrying stone there in 1974 but ceased active mining in July 1977.

In 1989, the applicable county ordinance was changed to provide that a plan of operation shall be submitted to, and approved by, the county's Director of Planning, not the Board.

In 1990, Vulcan decided to "reactivate" the quarry, and a Vulcan attorney contacted the county planning department "to find out what it would take to re-open the quarry." The Vulcan representative spoke by telephone with Beverly F. Rogers, a county planning administrator.

As the result of the inquiry, Rogers discussed the matter with appellee Thomas E. Jacobson, the county's Director of Planning, and with the county attorney, because Rogers was uncertain about the process Vulcan "needed to go through to re-open the quarry." After consultation, "we determined," according to Rogers, that "the conditional use was still valid, but the plan of operation had expired in 1982 and that in order to re-open the quarry, it would be necessary for them to submit another plan of operation to the Planning Commission and Board of Supervisors." On July 26,

1990, Rogers advised Vulcan's attorney "over the phone of what we had determined."

Vulcan did not challenge this advice at the time and proceeded to work with county officials in developing an acceptable, new plan of operation. In two "preapplication" meetings held in August and September 1990 attended by Vulcan representatives, Rogers discussed again the requirements she "had determined would be necessary in order for Vulcan to begin reoperation of the quarry." She told Vulcan that a new plan of operation would have to be approved by the Board after it had received a recommendation from the planning commission.

In April 1991, Vulcan acquired an option to purchase a 37-acre tract, the Lane property, north of and adjacent to the original site. Both the original site and the Lane property are zoned "A Agricultural District," a classification that authorizes mining and quarrying operations with a conditional use permit.

On May 17, 1991, Vulcan filed with the county planning department an application for a new plan of operation to reactivate the quarry. The new plan proposed quarrying operations on the original site with related activities to be conducted on the Lane property. At the same time, Vulcan filed an application for a conditional use permit for the activities to be conducted on the Lane property.

Vulcan representatives continued to work independently and with county officials to develop a new plan of operation, focusing on issues of particular concern to the county, such as, the effects of blasting, noise, dust, and traffic on the surrounding neighborhood, which had undergone some residential development since 1972. The parties also considered Vulcan's proposed hours of operation as well as the effect of quarrying activities on private well water supplies.

Finally, the new plan was modified sufficiently and on October 15, 1991, the planning department, including the Director of Planning, recommended approval. Noting the existing conditional use permit for quarrying on the original site and the proposed conditional use permit for the Lane property, the recommendation stated that the provisions of the new plan "are designed to minimize as much as practical the impact of quarrying operations upon the surrounding community." Approval of the new plan was made subject to approval of the conditional use on the Lane property.

On the same day, after a public hearing, the county planning commission, rejecting the planning department's recommendation, voted to recommend to the Board of Supervisors denial of the new plan of operation and the application for the conditional use permit on the Lane property.

In a letter dated November 19, 1991, Vulcan notified the county attorney that it objected to the process required by the county. Vulcan took the position that the Board of Supervisors lacked authority to approve the new plan and that the applicable county ordinance vested exclusive jurisdiction in the Director of Planning to review and approve plans of operations for quarries. Eight days later, on November 27, after another public hearing, the Board approved the Lane conditional use permit but, over Vulcan's protest, rejected the new plan of operation.

On December 27, 1991, Vulcan filed the present proceeding against the Board and the Director of Planning. In a bill of complaint and petition for writ of mandamus, invoking the declaratory judgment statutes, Vulcan challenged the Board's decision to reject the new plan and sought, *inter alia*, a declaration that the Director of Planning had exclusive authority to review Vulcan's plan. Vulcan also sought an injunction and writ of mandamus compelling the Director of Planning to approve the plan. Alternatively, in the event the court concluded that the Board had the authority to review the plan, Vulcan sought a declaration that the Board's rejection was unlawful, as well as an injunction and writ of mandamus to compel the Board's approval of the plan.

Following a two-day bench trial, the court ruled in favor of the County and its Director of Planning (collectively, the County). In a January 1993 letter opinion, the court stated that the "central issue" in the case is the application of Code § 15.1-496.1 to the facts. That section, codified among the zoning statutes in Article 8, Chapter 11 of Title 15.1, and dealing with appeals to boards of zoning appeals, provided, as pertinent:

"An appeal to the board may be taken by any person aggrieved . . . by any decision of the zoning administrator or from any order, requirement, decision or determination made by any other administrative officer in the administration or enforcement of this article or any ordinance adopted pursuant thereto. Such appeal shall be taken within thirty days after the decision appealed from by filing with the zoning

administrator, and with the board, a notice of appeal specifying the grounds thereof. . . ."

The trial court decided that Vulcan "had the obligation to appeal . . . the ruling of the 'administrative officer,'" who "had made a determination that the plan of operation would have to be reviewed by the Board of Supervisors." The court said "that this decision dealt with application and interpretation of the County ordinance which could be the subject of appeal to the Board of Zoning Appeals." Because "Vulcan never sought any appeal," the court said, Vulcan had failed to exhaust administrative remedies and was precluded from raising the issue during the court action.

Finally, the court decided that the Board of Supervisors, in rejecting the new plan, had made a legislative decision that was fairly debatable, not arbitrary and capricious. Vulcan appeals from the March 1993 order dismissing the proceeding.

On appeal, urging affirmance of the decision below, the County argues that in "the summer of 1990, the County notified Vulcan that it must obtain Board approval of a plan of operation before Vulcan could lawfully operate the quarry. Instead of appealing the County's decision, Vulcan embraced it and acted in accordance with it during 16 months of preparing the plan for Board review." The County points out that Vulcan never voiced disagreement with the process until after the planning commission recommended against the new plan and until eight days before the Board meeting. Thus, according to the County, § 15.1-496.1 "precludes Vulcan from contesting that decision now." We disagree.

■ The focus of this appeal must be on the statute only. The trial court eliminated from the court action the issue whether the Board of Supervisors had authority, under the applicable county ordinance, to review the new plan. The court removed this issue from consideration because, based on the court's interpretation of § 15.1-496.1, it was of opinion that Vulcan failed to exhaust administrative remedies by appealing and raising the issue before the County's Board of Zoning Appeals.

In the land use context, a landowner may be precluded from making a direct judicial attack on a zoning decision if the landowner has failed to exhaust "adequate and available administrative remedies" before proceeding with a court challenge. *Rinker* v. *City of Fairfax*, 238 Va. 24, 29, 381 S.E.2d 215, 217 (1989). *Ac-*

*cord Gayton Triangle Land Co.* v. *Board of Supervisors*, 216 Va.
764, 766, 222 S.E.2d 570, 572 (1976). As Vulcan argues, it had
no adequate or available administrative remedy to Rogers's July
26, 1990 oral advice over the telephone, or to the oral advice de-
livered during the August and September 1990 "preapplication"
meetings.

█ Code § 15.1-496.1 requires a person to be "aggrieved" by a
"decision or determination made by any . . . administrative of-
ficer in the administration" of any county ordinance adopted pur-
suant to the state enabling statutes. This language is clear and
plain. The meaning of "aggrieved" is settled. When used in a stat-
ute, the term contemplates "a denial of some personal or property
right, legal or equitable." *Virginia Beach Beautification Comm'n*
v. *Board of Zoning Appeals*, 231 Va. 415, 419-20, 344 S.E.2d
899, 902-03 (1986).

In the present case, at the time of the 1990 oral communica-
tions to Vulcan representatives, no applications filed by Vulcan
were pending before any county administrative department. The
application for the Lane conditional use permit and the applica-
tion for approval of the new plan of operation were not filed until
May 17, 1991. The County took no action against Vulcan as the
result of the statements by Rogers and other administrators.

█ Thus, until an application was pending asking for specific
relief, there could be no denial of any personal or property right
resulting from any administrative decision or determination.
Without a pending application, the oral comments merely were
advisory. Hence, Vulcan was not "aggrieved" within the meaning
of the statute, and did not have to appeal to the Board of Zoning
Appeals. This means that Vulcan did not fail to exhaust adminis-
trative remedies and that the trial court erred in eliminating from
the litigation the question of the Board's authority to review the
new plan.

Because of the preclusion, several issues raised by the parties
have not been addressed by the trial court. For example, the trial
court has not considered the dominant issue, that is, whether the
Board had authority to review the new plan or whether that power
resided with the Director of Planning. In addition, the County
maintained there is no evidence that the 1971 use permit, or the
condition contained in it requiring Board approval of a plan of
operation, has ever been amended or repealed. Thus, the County
argues, the decision that the new plan of operation had to be ap-

proved by the Board was correct. The trial court has not addressed this argument, although the court did rule that Vulcan could not continue to operate under the 1972 plan, a circumstance that neither party disputes on appeal. The parties have argued those issues before us, but we express no opinion on them. In this case, we sit as a court of review and, at this stage of the proceeding, we have nothing to review relating to those issues.

We will not address the other ruling of the trial court, debated on appeal, *viz.*, that the Board's decision to reject the plan was fairly debatable. This would cause us to render a mere advisory opinion in the event the trial court decides on remand that the Board did not possess the authority to review the plan.

■ Should the trial court decide upon remand, however, that the Board possessed such authority, there will be no necessity for a further Board meeting and public hearing to consider this new plan. Under those circumstances, the trial court will, *ipso facto*, enter another order finding that the Board's decision was fairly debatable. If there is another appeal by Vulcan, we shall review the trial court's decision confirming the Board's rejection on the present record only.

■ Accordingly, because of the erroneous ruling on exhaustion, we will reverse the order of the trial court and remand the case for further proceedings to allow the trial court to consider the unresolved issues.

*Reversed and remanded.*