COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, Lorish and Senior Judge Humphreys
Argued at Alexandria, Virginia


HILARY KOZIKOWSKI, ET AL.

v.      Record No. 1161-23-4

MONROE RE, LLC, ET AL.                    MEMORANDUM OPINION[*] BY
                                          JUDGE FRANK K. FRIEDMAN
AARON KOZIKOWSKI, ET AL.                       FEBRUARY 4, 2025

v.      Record No. 1164-23-4

MONROE RE, LLC, ET AL.


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Paul F. Sheridan, Judge Designate[1]

H. Christopher Bartolomucci (Gifford R. Hampshire; James R.
Meizanis, Jr.; Schaerr Jaffe LLP; Blankingship & Keith, P.C., on
briefs), for appellants.

Matthew A. Fitzgerald (Brooks H. Spears; Michael Allen;
McGuireWoods LLP; Relman Colfax PLLC, on brief), for appellees
Virginia Health Operations LLC and Monroe RE, LLC.

Nicholas J. Lawrence for appellee Board of Supervisors of
Loudoun County, Virginia.


These consolidated appeals involve the operation of a group home in Loudoun County by

Monroe RE, LLC, Monroe Real Estate, LLC, and Virginia Health Operations LLC d/b/a Newport

Academy ("Newport" or "appellees").  Before purchasing any property, Newport asked the

county's zoning administrator whether it could operate three group homes on three adjacent parcels

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge Sheridan, who presided over these consolidated cases, is a retired judge from the 17th Judicial Circuit of Virginia.

of land pursuant to Code § 15.2-2291. In response to Newport's request, the county's deputy zoning administrator stated in a letter that Newport could operate group homes on the specified parcels *if* certain conditions were satisfied. A group of nearby neighbors[2] ("neighbors" or "appellants") challenged the zoning administrator's letter before the Board of Zoning Appeals ("BZA"). The BZA determined that the letter was merely advisory and not appealable. The neighbors then appealed to the circuit court, arguing that they were aggrieved by the zoning administrator's letter because it constituted a binding, appealable determination. The sole issue in No. 1161-23-4 is whether the zoning administrator's letter is appealable or instead merely advisory.

Ultimately, a zoning permit was issued to Newport, allowing it to operate one group home on one parcel of land in an agricultural zoned area pursuant to Code § 15.2-2291.[3] The neighbors appealed, and the BZA upheld the issuance of the zoning permit. Appellants then challenged the issuance of the permit in circuit court, arguing that the BZA erroneously found that Newport satisfied Code § 15.2-2291. The primary issue in No. 1164-23-4 is whether the BZA wrongly determined that Newport met the requirements of Code § 15.2-2291. The circuit court agreed with Newport in both cases, and the neighbors now appeal. Because we agree with the circuit court that the zoning administrator's letter was not appealable and further that the circuit court did not err in upholding the issuance of the zoning permit, we affirm.

---

[2] The appellants are Hilary Kozikowski, Aaron Kozikowski, Lawrence Thomas, Mary Catherine Thomas, Thomas Wright, Cheryl Wright, Lynne Wright, Michael Wright, William Feitshans, Beverly Feitshans, Addie Palmer, and Craig Palmer.

[3] Whether a permit should be issued to the other two properties is not before this Court. The parties represented on brief and at oral argument that the issue of permits for the other two properties is currently being litigated.

BACKGROUND

Newport's group homes and its screening process

Newport is a for-profit entity that operates group homes nationwide that assist adolescents and young adults experiencing mental health issues. Newport's group homes are designed to operate in single-family dwellings with the goal of "creat[ing] a very family-like, comfortable, serene environment in a single-family residence." Those staying at Newport's group homes "eat all meals in a family-style setting," "have access to common areas of the home," and participate in group activities. Typically, those staying at Newport's group homes remain there for between 30 and 90 days, with an average stay of 47 days.

Newport screens applicants prior to entry into its group homes; the process includes "several layers of assessments conducted by licensed clinicians, the client[s] themselves, and their family (independently)" as well as "full clinical and behavioral reports from licensed providers." An applicant is denied entry if they meet any "exclusionary criteria" including "conduct disorder," "property damage or assaultive behaviors," or "[u]se of drugs/alcohol." Group home applicants are "ineligible for admission" if they "need . . . medical detox" or exhibit "active substance abuse." "Any applicant with a primary substance abuse diagnosis, or requiring any sort of substance abuse treatment, will not be admitted for treatment at the Properties." Those staying at the group home are drug tested at the time of admission and as appropriate thereafter during their stay; any resident caught using or possessing drugs is "subject to administrative discharge."

The zoning administrator's letter to Newport

Newport identified three parcels of land in Loudoun County on Gleedsville Road at 20173, 20179, and 20191, where it considered opening and operating group homes. Each parcel of land included a single-family home. In September 2021, Newport sent a letter to the Loudoun County Director of Planning and Zoning, asking whether "in the event Newport Academy were

to purchase one or more of the Properties, it would be permitted, by-right, to operate its proposed residential facilities on each upon appropriate licensure from [the Virginia Department of Behavioral Health and Developmental Services]." Newport originally planned to operate "the Properties as three separate, single-sex group residential facilities for no more than eight adolescents, with one or more nonresident staff persons."

In November 2021, Michelle Lohr, deputy zoning administrator for the county, responded via letter to Newport. The letter stated that while "the proposed use is a Congregate Housing Facility, a use not permitted in the AR-1 zoning district[,]" nonetheless it "would be permitted as a Dwelling, Single-Family Detached on each of the subject properties *if* the use meets the Zoning Ordinance definition of 'Family' *and* the criteria of Section 15.2-2291.A of the Code of Virginia. Licensure by the Department of Behavioral Health and Developmental Services is required."[4] (Emphases added). The letter continued that "the proposed use *may* be permitted as a single-family dwelling, *if* it meets the definition of 'Family,'" as defined in the zoning ordinance. (Emphases added). The neighbors emphasize and rely upon the conclusion of the letter that provided "any person aggrieved . . . by an order, requirement, decision or determination made by an administrative officer in the administration or enforcement of the provisions of the Zoning Ordinance may appeal said decision within 30 days to the [BZA] in strict accordance with Section 15.2-2311 of the Code of Virginia." Further, it stated that "[t]his decision is final and unappealable if not appealed within 30 days." Newport ultimately purchased the three parcels of land on Gleedsville Road.

---

[4] In December 2023, the Board of Supervisors adopted the Loudoun County Zoning Ordinance, replacing the previous Revised 1993 Zoning Ordinance. Because this appeal proceeded under the Revised 1993 Zoning Ordinance and no party argued the new zoning ordinance applies, we apply the Revised 1993 Zoning Ordinance. *See* https://perma.cc/4Q62-EVFY. Any reference in this opinion to any part of the Loudoun County zoning ordinance refers to the Revised 1993 Zoning Ordinance.

Appellants challenged the deputy zoning administrator's letter to the BZA. Although appellants argued that Newport failed to meet the statutory requirements of Code § 15.2-2291, the BZA, upon hearing evidence and arguments, ultimately declined to decide the issue on the merits. Instead, it voted three to one to dismiss the appeal because the zoning letter was only "advisory" and thus not appealable.[5]

Appellants then challenged the BZA's determination that the letter was not appealable, asking the circuit court to "modify" the decision of the BZA and address the merits. The circuit court declined: "I'm not attempting to do that thing I was partially requested to do and verify the validity and legal correctness of the letter . . . ." The circuit court also noted that, "At no time have I thought I was ruling on the correctness of the November 21 letter." The circuit court ultimately affirmed the BZA's determination that the zoning administrator's letter was not appealable.

The BZA upholds the zoning administrator's issuance of a zoning permit to Newport to operate a group home at 20173 Gleedsville Road

Newport obtained a license from the Virginia Department of Behavioral Health and Developmental Services ("VDBHDS") to operate a group home at 20173 Gleedsville Road. In November 2022, Mark Stultz, a zoning administrator for Loudoun County, issued a permit allowing Newport to operate a group home for five people at 20173 Gleedsville Road, finding that it qualified for by-right operation in an AR-1 district under Code § 15.2-2291.[6] The permit was approved on the condition that Newport maintain licensure with the VDBHDS.

---

[5] The BZA majority explained that appellants could appeal only if there was a "pending application" or a "permit issued to the subject properties."

[6] "AR" is an abbreviation for "Agricultural Rural." Loudoun County Zoning Ordinance Article 2, § 2-100. *See* https://perma.cc/4Q62-EVFY.

Appellants challenged to the BZA the zoning administrator's issuance of a zoning permit. Appellants argued that the permit actually "relate[d] to three properties," and they asked the BZA to determine whether the three adjacent properties are "intended to be used together, as an assemblage, as a campus." A majority of the BZA rejected that argument, finding that issue was not ripe: "On the question of this being a congregate facility or consolidation of three [properties], that remains to be seen . . . ." Appellants also asserted three other grounds to find that Newport failed to satisfy Code § 15.2-2291: (1) the group home is not a "residential facility," (2) those that stay at the group home do not "reside" there, and (3) the group home accepts current drug addicts. The BZA, by a three to two vote, upheld the issuance of the permit, finding that the permit for 20173 Gleedsville Road "complies with the zoning ordinance."

Appellants challenged the BZA's decision to the circuit court. This case was consolidated with appellants' challenge to the zoning letter, and the consolidated cases were set for a final hearing before the circuit court.[7] The court ultimately affirmed the BZA's decision to uphold the issuance of the permit at 20173 Gleedsville Road.

## STANDARD OF REVIEW

"The BZA 'is a creature of statute possessing only those powers expressly conferred upon it.'" *Avonlea LLC v. Moritz*, 81 Va. App. 729, 733 (2024) (quoting *Adams Outdoor Advert., Inc. v. Bd. of Zoning Appeals of the City of Va. Beach*, 261 Va. 407, 415 (2001)). "An appeal to the board may be taken by any person aggrieved . . . by any decision of the zoning administrator or from any order, requirement, decision or determination made by any other

---

[7] In the circuit court proceeding, appellants again argued that the three "structures are proposed as a single facility." The circuit court declined to accept this argument for the same reason as the BZA: no permit for 20179 nor 20191 Gleedsville Road had yet been issued or was before the circuit court. The court stated, "Let's not try a future case . . . let's not create what ifs in the future." He continued, "I'm convinced that we're presently dealing with one separate building."

administrative officer in the administration or enforcement of this article . . . ." Code § 15.2-2311. "Any person . . . aggrieved by any decision of the board of zoning appeals . . . may file with the clerk of the circuit court . . . a petition . . . specifying the grounds on which aggrieved within 30 days after the final decision of the board." Code § 15.2-2314. "Upon the presentation of such petition, the court shall allow a writ of certiorari to review the decision of the board of zoning appeals . . . ." *Id.*

"The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review." *Id.* "In the case of an appeal from the board of zoning appeals to the circuit court of an order, requirement, decision or determination of a zoning administrator or other administrative officer in the administration or enforcement of any ordinance or provision of state law . . . the findings and conclusions of the board of zoning appeals on questions of fact shall be presumed to be correct." *Id.* "The court shall hear any arguments on questions of law de novo." *Id.*

ANALYSIS

I. The circuit court did not err when it found that the zoning letter was not appealable to the BZA, nor did it err when it declined to set aside the letter as contrary to law.

The first case (1161-23-4) presents a single, narrow issue: was the deputy zoning administrator's letter to Newport appealable under Code § 15.2-2311. This issue presents a pure question of law, and thus we review de novo whether the BZA erred in dismissing this appeal on the ground that the zoning letter was not an appealable order. *See Graydon Manor, LLC v. Bd. of Supervisors of Loudoun Cnty.*, 79 Va. App. 156, 167 (2023) ("We review the circuit court's legal determinations de novo."); Code § 15.2-2314 ("The court shall hear any arguments on questions of law de novo.").

a. Case law on appealability

In determining whether the zoning letter is appealable or merely advisory, we find case law from both this Court and our Supreme Court instructive and ultimately controlling. In *James v. City of Falls Church*, 280 Va. 31, 34 (2010), a church asked a zoning administrator for "a zoning interpretation" to determine whether it could consolidate seven parcels of land. The zoning administrator opined in a letter that such consolidation was permissible, but that the actual consolidation process was controlled by a separate planning commission. *Id.* at 34-35. This planning commission ultimately denied the church's request to consolidate. *Id.* at 36. On appeal, the church argued that "the circuit court erred in ruling that the Planning Commission had the authority to ignore the zoning administrator's interpretation" of a city ordinance. *Id.* at 42. Our Supreme Court disagreed and found that the letter "lacked the finality of an 'order, requirement, decision or determination' under Code § 15.2-2311(C)." *Id.* at 44 (citing *Bd. of Supervisors of Stafford Cnty. v. Crucible, Inc.*, 278 Va. 152, 160-61 (2009)). The Supreme Court added that the zoning administrator "merely provided an interpretation of" a city ordinance and that "[t]he Planning Commission was not obliged to adopt the zoning administrator's 'interpretation' of" a city ordinance. *Id.* at 44-45.

In *Crucible*, which involved an effort to expand a security training facility in Stafford County, the zoning administrator interpreted an ordinance to allow Crucible's proposed use to qualify as a school, and thus be allowed by-right.[8] *See Crucible, Inc.*, 278 Va. at 156. Before purchasing the land to expand its facility, the landowner met with the county zoning administrator to describe the proposal and to confirm that its use of the property would be classified as a "school," a by-right use, under the zoning ordinance. The zoning administrator

---

[8] While *Crucible* is primarily a vested rights case, it is still instructive because the landowner advanced an argument under Code § 15.2-2311.

confirmed in writing that under the existing ordinance the facility would qualify as a "school" and that schools were permitted in that zoning district. But our Supreme Court observed that the zoning administrator, based on the plain language of the zoning verification, "did not affirmatively approve the project" and "there was no commitment contained within the zoning verification." *Id.* at 160. "The zoning administrator simply answered the question concerning classification of Crucible's project according to the . . . [o]rdinance in place on the date the request was made." *Id.*

After the landowner purchased the property, the board of supervisors changed the ordinance to require a conditional use permit to operate a school in that zoning district. In the alternative to its vested rights argument, the landowner argued that the zoning verification was a "determination" under Code § 15.2-2311. The Supreme Court rejected this argument and found that the zoning administrator's verification letter was not an "order, requirement, decision or determination" pursuant to Code § 15.2-2311 because the zoning administrator's letter did not grant Crucible any new right or make it any promises; the letter only responded to a potential application, not an actual one. "The zoning verification letter did not permit Crucible to use its property in a way that was otherwise not allowed under then-current zoning laws, and Crucible cannot establish a right to procced based upon Code § 15.2-2311(C)." *Id.* at 161.

Relatedly, in *Vulcan Materials Company v. Board of Supervisors*, 248 Va. 18, 20 (1994), a county planning administrator "determined" that the landowner needed to submit a plan of operation to the planning commission and board of supervisors for approval before it could reopen a quarry. The plan was then rejected by the county board, and the owner sued in circuit court. The circuit court found that the landowner needed to appeal the staff "determination" to the BZA, and since it failed to do so, the landowner was precluded from revisiting the matter in a separate court action. *Id.* at 23. On appeal, our Supreme Court reversed, noting that the term

"aggrieved" contemplates "a denial of some personal or property right, legal or equitable." *Id.* at 24 (quoting *Virginia Beach Beautification Comm'n v. Bd. of Zoning Appeals*, 231 Va. 415, 419 (1986)). The Supreme Court added that the owner had not filed any application when it contacted the planning department for advice and that the county had taken no adverse action against the owner simply because of the "determination" by the county: "Thus, until an application was pending asking for specific relief, there could be no denial of any personal or property right resulting from any administrative decision or determination. Without a pending application, the oral comments merely were advisory." *Id.* at 24.

*Lilly v. Caroline County*, 259 Va. 291 (2000), indicates that whether a determination is made in the context of a pending application is particularly important to the appealability analysis, and further that the form of the determination—written or oral—is not dispositive. *Lilly* involved an oral determination made by a zoning administrator during a planning commission hearing regarding a special exception application.[9] The oral ruling was then repeated in a public hearing before the board of supervisors. In an action in circuit court challenging the decision of the board of supervisors, the court ruled that the challengers were barred from contesting the determination because they had not timely appealed to the BZA. Our Supreme Court affirmed, not drawing any distinction between written and oral opinions. *Id.* at 296 (noting that "[t]here is no requirement in the statute that the administrator's decision be in writing"). Instead, the Supreme Court focused on the fact that the determination was made in the context of a pending application and relied upon by the board in deciding whether to grant the application, and thus

---

[9] The zoning administrator's determination was "that he had determined that the radio tower was a by-right use in the Rural Preservation zoning district." *Lilly*, 259 Va. at 295.

the plaintiffs were aggrieved when the application was granted over their objection.[10]  The Court

further noted the distinction between *Lilly* and *Vulcan Materials*:

> There, [in *Vulcan Materials*,] we held that because no application
> was pending before any county administrative department for
> specific relief, the person was not 'aggrieved' within the meaning
> of the statute.  Thus, we said, any oral comments by county
> officials merely were advisory and no appeal to the board of
> zoning appeals was required.  Here, there were applications for
> specific relief pending at the time [the Director of Planning]
> announced his decision.

*Id.* at 298.

Finally, we note a recent decision from this Court that further necessitates our conclusion

that the zoning letter in this case was not appealable.  *See Graydon Manor, LLC*, 79 Va. App. at

156.  Graydon Manor purchased a large parcel of land that it sought to develop as a co-housing

community with housing, a restaurant, a brewery, and gardens.[11]  It then sought a zoning

determination under county ordinance, where it "posed 28 questions seeking clarification on the

co-housing use type in the AR-1 zoning district."  *Id.* at 162.  Prior to obtaining a response from

the county, Graydon Manor filed a zoning permit application.  The county then responded to

---

[10] Unlike the determination in *Lilly*, which was made as part of the board's consideration of a pending application, here the deputy administrator's zoning letter was issued one year before Newport filed its application for a zoning permit at 20173 Gleedsville Road.

[11] In *Graydon Manor*, the county ordinance defined co-housing as:

> A residential arrangement on the site of an active agricultural,
> horticultural or animal husbandry operation consisting of more
> than one individually owned dwelling unit and extensive common
> facilities, such as a large dining room kitchen, lounges, meeting
> rooms, recreation areas, library, workshops, childcare, laundry,
> greenhouse, or other facilities for use by the organized group of
> residents living in the co-housing who particulate in the planning,
> design, ongoing management and maintenance of the residential
> arrangement and in the routine activities of household living.

79 Va. App. at 162 n.1.

each question posed and stated that the ordinance did not permit the proposed use. "Graydon Manor separately appealed both the zoning determination and the permit denial to the [BZA], which affirmed the County in both matters." *Id.* at 163. They then appealed to the circuit court and the cases were consolidated.

In *Graydon Manor*, "the circuit court determined that, as a matter of law, Graydon Manor was not an aggrieved party because the Administrator's zoning determinations were merely an 'abstract advisory opinion.' Thus, the BZA lacked the authority to hear its claim under Code § 15.2-2311." *Id.* at 167. On appeal, this Court was presented with the issue of "whether Graydon Manor was an aggrieved party whose claim was properly before the court." *Id.* We stated that the term "'[a]ggrieved' has a 'settled' meaning, 'contemplat[ing] "a denial of some personal or property right, legal or equitable."'" *Id.* (second alteration in original) (quoting *Vulcan Materials*, 248 Va. at 24). "[U]ntil an application was pending asking for specific relief, there could be no denial of any personal or property right resulting from any administrative decision or determination." *Id.* (alteration in original). "In contrast, an administrator's interpretation of the zoning ordinance issued while an application for specific relief is pending is not advisory, and affected individuals are 'aggrieved' under the terms of the zoning ordinance." *Id.* Because the zoning administrator's letter was "merely advisory in nature" and "no application was pending for specific relief at the time the questions were submitted, the issuance of the determinations in response to the questions cannot have denied any personal or property right," and thus we held that Graydon Manor was not aggrieved by the zoning administrator's determinations and the BZA lacked the statutory authority to hear the appeal. *Id.* at 168.

b. Based on this case law, we determine that the zoning letter was not appealable.

Based on the foregoing, controlling case law, we conclude that the zoning administrator's letter was not appealable to the BZA and instead, like in *Graydon Manor*, "was merely advisory

- 12 -

in nature." Here, the zoning letter lacks the "finality of an order" and amounts to an interpretation of state and county law without any pending application before it. Notably, the zoning letter used conditional language, indicating that future events needed to occur for Newport to obtain a permit: "the proposed use would be permitted as a Dwelling, Single-Family Detached on each of the subject properties *if* the use meets the Zoning Ordinance definition of 'Family' and the criteria of Section 15.2-2291.A of the Code of Virginia. Licensure . . . is required." (Emphasis added). The zoning letter by its plain terms states that Newport can obtain a zoning permit only if it (1) meets the Zoning Ordinance definition of "Family," (2) satisfies the requirements of Code § 15.2-2291(A), and (3) obtains appropriate licensure. While appellants contend that the zoning letter also included language suggesting that the letter was an appealable determination, the foregoing caselaw indicates that the subjective belief of an administrator is not dispositive in determining whether the letter here is in fact a final appealable determination. *See also de Haan v. de Haan*, 54 Va. App. 428, 438 (2009) ("The fact that an order is labeled as final is not dispositive on its finality; the order must, in fact, be final.").

The zoning letter in this case grants Newport no immediate right to do anything, nor was the zoning letter issued in the context of a pending application. *See Vulcan Materials*, 248 Va. at 24 (explaining that there can "be no denial of any personal or property right resulting from any administrative decision or determination" without a pending application). It provides that a zoning permit and state licensure is required for any property to qualify as a group home under Code § 15.2-2291. The letter also repeatedly uses the word "if" to explain that a permit would be allowed only if certain future conditions were met. *See Graydon Manor*, 79 Va. App. at 167 (holding that a zoning administrator's letter was merely advisory because "no application was pending for specific relief at the time the questions were submitted"). For instance, Newport would not be entitled to a permit to operate a group home if it failed to satisfy Code § 15.2-2291.

At the time the zoning letter was issued, it was still unknown whether Newport could satisfy the statute or obtain the necessary licensure. *See James*, 280 Va. at 45 (finding that a zoning administrator's "interpretation" of a city ordinance is not a final order or determination under Code § 15.2-2291). We agree with the circuit court that the zoning letter "did not have a finality to it." Thus, we affirm the circuit court's decision, affirming the BZA, that the zoning letter was not an appealable final determination.

II. The circuit court did not err when it affirmed the BZA's determination that Newport's group home was entitled to a zoning permit under Code § 15.2-2291.

Statutory interpretation involves a pure question of law that we review de novo. *See VACORP v. Young*, 298 Va. 490, 494 (2020). When interpreting a statute, we are generally guided by its plain meaning: "Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what is has actually expressed." *Barr v. Town & Country Props., Inc.*, 240 Va. 292, 295 (1990). "We must also assume that the legislature chose, with care, the words it used[,]" and "[t]here can be no departure from the words used where the intention is clear." *Id.* But on appeal, the BZA's factual findings are entitled to a presumption of correctness by the circuit court. Code § 15.2-2314. "In an appeal from a circuit court decision reviewing a determination by a board of zoning appeals, 'this Court accords a presumption of correctness to the circuit court's factual findings but reviews its conclusions of law de novo.'" *Prince William Bd. of Cnty. Supervisors v. Archie*, 296 Va. 1, 9 (2018) (quoting *W&W P'ship v. Prince William Cnty. Bd. of Zoning Appeals*, 279 Va. 483, 486 (2010)).

Whether Newport was entitled to a zoning permit to operate a group home in an agricultural zoned area by-right involves Code § 15.2-2291(A):

> Zoning ordinances for all purposes shall consider a residential
> facility in which no more than eight individuals with mental
> illness, intellectual disability, or developmental disabilities reside,

- 14 -

with one or more resident or nonresident staff persons, as residential occupancy by a single family. For the purposes of this subsection, mental illness and developmental disability shall not include current illegal use of or addiction to a controlled substance as defined in § 54.1-3401. No conditions more restrictive than those imposed on residences occupied by persons related by blood, marriage, or adoption shall be imposed on such facility. For purposes of this subsection, 'residential facility' means any group home or other residential facility for which the Department of Behavioral Health and Developmental Services is the licensing authority pursuant to this Code.

In Loudoun County, the AR-1 zoning district permits "residential uses" and it also specifically allows "Dwelling, single-family detached." *See* Loudoun County Zoning Ordinance Article 2, § 2-102. That term—"Dwelling, Single Family Detached"—is defined as, "[a] residential dwelling unit, other than a portable dwelling, designed for and occupied by one family only and not structurally connected or attached to any other dwelling." Loudoun County Zoning Ordinance, Article 8 (listing definitions). By ordinance, "Family" is defined, in relevant part, as "[a]ny group identified in Section 15.2-2291 of the Code of Virginia." *Id.*

With this background in mind, we turn to the neighbors' arguments in support of their position that the circuit court erred by affirming the BZA's decision to uphold the issuance of a zoning permit to Newport under Code § 15.2-2291. The neighbors assert three assignments of error related to the issuance of the zoning permit and argue the circuit court erred in the following respects: (1) by ruling that Newport's proposed use of three adjacent properties in an AR-1 zone was permitted by the foregoing statute where the zoning letter opined that Newport's proposed use would constitute a "Congregate Housing Facility," (2) by ruling that the group home constitutes a "residential facility" and that those staying at the group home "reside" at it, and (3) by ruling that Newport's group home does not accept current illegal drug users in violation of the statute.

- 15 -

a. Appellants' reliance on the term "Congregate Housing Facility" in the zoning code is misplaced.

In its first assignment of error, appellants argue that Newport's group home constitutes a "Congregate Housing Facility" and because such facilities are not permitted in an AR-1 zone, Newport should not have been issued a permit.[12]  Appellants also point to the deputy zoning administrator's letter that stated Newport's proposed use is a "Congregate Housing Facility."  As we already observed, the zoning letter was advisory and constituted an interpretation of county ordinance and state law; the BZA was not bound by the zoning letter.  Again, this makes sense because the letter by its very language was conditional and dependent on future events and actions by Newport.

Appellants' contentions that this case involves a "Congregate Housing Facility" are inconsistent with the governing zoning provisions and the language of Code § 15.2-2291.  As a starting point, "Congregate Housing Facility" expressly notes that "a single-family dwelling" is *not* such a facility.  Further, Loudoun County's zoning code permits single-family detached dwellings, defined as "residential dwelling unit[s] . . . designed for and occupied by one family only," in AR-1 zones.  Loudoun County Zoning Ordinance Article 2, § 2-102; Article 8 (defining "Dwelling, Single Family Detached").  Importantly, the zoning ordinance's definition of "Family" includes "[a]ny group identified in Section 15.2-2291 of the Code of Virginia."  Loudoun County Zoning Ordinance, Article 8.  The relevant language from Code § 15.2-2291 states that "[z]oning ordinances for all purposes shall consider a residential facility in which no more than eight individuals with mental illness, intellectual disability, or developmental

_____

[12] The zoning ordinance, in place at the time, defined "Congregate Housing Facility" as "[a] structure *other than a single-family dwelling* where more than four (4) unrelated persons reside under supervision for special care, treatment, training or similar purposes, on a temporary or permanent basis."  Loudoun County Zoning Ordinance, Article 8 (emphasis added).

- 16 -

disabilities reside, with one or more resident or nonresident staff persons, as residential occupancy by a single family."

We disagree with appellants that the definition of "Congregate Housing Facility" controls this issue.[13] We conclude that the zoning ordinance treats Newport's licensed group home at 20173 Gleedsville Road, for fewer than eight people, as a single-family detached dwelling; as such, it was entitled to a zoning permit, despite the group home's location in an AR-1 zone.[14]

> b. Newport's group home is a "residential facility" pursuant to Code § 15.2-2291, and those that stay at the group home for a meaningful period of time "reside" there.

In their second assignment of error, appellants argue that, even if Code § 15.2-2291 applies, Newport fails to satisfy two requirements of the statute. First, they argue that the group home is not a "residential facility" as that term is used in the statute. Second, they argue that the people that stay at the group home do not "reside" there because their stays are "for the specific, limited purpose of seeking treatment" and only "temporary." Appellants then suggest that because those who stay at the group home do not "reside" there, it necessarily follows that the group home cannot be considered a "residential facility." We disagree with appellants' argument because it essentially ignores the sweeping language of Code § 15.2-2291.

---

[13] Because we conclude that the definition of "Congregate Housing Facility" does not apply to this case, we do not address appellants' additional arguments related to "Congregate Housing Facilit[ies]." *See Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (explaining that "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'").

[14] The question of whether multiple separately licensed group homes located adjacent to one another would violate the eight-person limit in Code § 15.2-2291 is not presented in this appeal because this case involves the issuance of one permit for a single group home at 20173 Gleedsville Road. Whether Newport can operate a second group home on an adjacent lot is a question for another day. After all, the issue whether the second and third properties can obtain zoning permits is currently being litigated, and thus we do not even know the outcome of those permit applications.

"In the construction of statutes, the meaning of the word *residence* depends upon the context and purpose of the statute." *Cooper's Adm'r v. Commonwealth*, 121 Va. 338, 344 (1917); *see Williams v. Commonwealth ex rel. Smith*, 116 Va. 272, 277 (1914) (explaining that "[t]he meaning of the[] words [resident or residence] is to be determined from the facts and circumstances taken together in each particular case").

Here, Code § 15.2-2291 uses the term "residential" and "reside" multiple times and provides ample context to construe it. In fact, Code § 15.2-2291 defines "residential facility" as "any group home . . . for which the [VDBHDS] is the licensing authority." It is undisputed that the Department licensed 20173 Gleedsville Road as a "mental health residential group home service." 20173 Gleedsville Road is a "residential facility" per Code § 15.2-2291. Having so qualified, so long as no more than "eight individuals with mental illness" reside there, it must be treated by law as a "residential occupancy by a single family" and face no "conditions more restrictive than those imposed on residences occupied by persons related by blood, marriage, or adoption." Code § 15.2-2291. Moreover, the statute references "resident or nonresident staff persons." *Id.* The statutory context makes clear that the people who sleep at this qualified "residential facility" for weeks at a time are "residents" who "reside" there.[15]

---

[15] In the Fair Housing Act context, federal courts of appeals have devised a two-part test for residency: (i) "whether the facility is intended or designed for occupants who 'intend to remain in the [facility] for any significant period of time'"; and (ii) "whether those occupants would 'view [the facility] as a place to return to' during that period." *Lakeside Resort Enters., LP v. Bd. of Supervisors*, 455 F.3d 154, 158 (2006) (alterations in original) (quoting *United States v. Columbus Country Club*, 915 F.2d 877, 881 (3d Cir. 1990)); *see also Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1215 (11th Cir. 2008) (applying the same two-factor test). Given that Code § 15.2-2291 was enacted to comply with the FHA, we find these factors relevant, although we stop short of adopting the federal test relating to "dwelling" under the FHA as the appropriate test here.

Here, it is undisputed that Newport's residents will typically stay at the group home between 30-90 days, with an average stay of 47 days.[16] The record further establishes that "occupants would 'view [the facility] as a place to return to' during that period." *Lakeside Resort Enters., LP v. Bd. of Supervisors*, 455 F.3d 154, 158 (2006) (alteration in original) (quoting *United States v. Columbus Country Club*, 915 F.2d 877, 881 (3d Cir. 1990)). The record is also full of testimonials from Newport's prior residents, who described their facilities as "home-like," "residential," and as "a warm house" with a "home environment." Newport representatives explained that "we try to create a very family-like, comfortable, serene environment in a single-family residence." During their stays at Newport's homes, residents will sleep there each night, "eat all meals in a family-style setting" with other residents, and associate with other residents in "common areas."

Based on the statute's plain language, which defines the term "residential facility," we have no trouble concluding that Newport's group home qualifies as such a facility. *See* Code § 15.2-2291 (defining "residential facility" as "any group home or other residential facility for which the [VDBHDS] is the licensing authority pursuant to this Code"). The facility's licensure as a "residential facility" strongly suggests that occupants who stay there for a meaningful period "reside" there. This conclusion is reinforced by case law.

Appellants argue that those at the group home do not "reside" at the facility because their stays are transient or temporary. This argument is rebuffed by long-established case law that one

---

[16] Courts have held that stays in this timeframe are "significant" enough to show residency under the FHA. *See, e.g.*, *Schwarz*, 544 F.3d at 1215 (under FHA holding that "stay on average six to ten weeks" sufficed for residency); *Lakeside*, 455 F.3d at 158 (under FHA holding that "average stay at the proposed facility at 14.8 days" sufficed for residency); *Connecticut Hosp. v. City of New London*, 129 F. Supp. 2d 123, 134 (D. Conn. 2001) (holding that stay of "one to three months" sufficed for residency); *Woods v. Foster*, 884 F. Supp. 1169, 1173-74 (N.D. Ill. 1995) (holding that a stay of up to 120 days was "temporary" but still a "residence" and "not . . . merely transient").

may reside somewhere, even though she does not have an intent to remain there indefinitely. *See, e.g.*, *Cooper's Adm'r*, 121 Va. at 344 ("In general terms [residence] may be said to be the dwelling place of a person, but it may be either his permanent or temporary abode."); *Long v. Ryan*, 71 Va. 718, 720 (1878) ("To reside in a place is to abide, to sojourn, to dwell there permanently or for a length of time.").

Newport argues that appellants conflate "domicile" and "residence." Residency and domicile are different concepts and have been recognized as such for over a century.[17] *See Long*, 71 Va. at 719. To establish domicile, one must show both residence and an intention to remain there indefinitely. *See Cooper's Adm'r*, 121 Va. at 346 ("Domicil[e] is defined to be residence at a particular place, accompanied with positive or presumptive proof of intention to remain there for an unlimited time."). While a person may only have one domicile, a person may have multiple residences. *See Towson v. Towson*, 126 Va. 640, 652 (1920) (noting that "while a man can have but one domicile at a time, he may have had more than one residence at the same time"); *Long*, 71 Va. at 720 ("A man may be a resident of a particular locality without having his domicile there. He can have but one domicile . . . although he may have several residences."); *Smith v. Smith's Ex'r*, 122 Va. 341, 345 (1918) (explaining that domicile is different from residence because it requires "beyond mere physical presence at [a] particular place" and "an intention to make it a permanent abiding place"). Our Supreme Court has observed that the term

_____

[17] While "the terms 'resident' and 'residence' have been interpreted to have the same meaning as 'domicile' for purposes of election law and tax laws," the issue in this case, zoning, coupled with the statutory context convinces us that "reside" is not synonymous with domicile here and nothing suggests "that the term 'reside' be given any meaning other than its ordinary one." *Bergman v. Bergman*, 25 Va. App. 204, 212 n.1 (1997).

residence generally "may be said to be the dwelling place of a person, but it may be either his permanent or temporary abode." *Cooper's Adm'r*, 121 Va. at 344.[18]

Under the facts here, we conclude that those staying at Newport's group home also "reside" there. Newport's group home has five bedrooms for five people. Those staying at the group home eat and sleep there. They remain at the group home during their stay; they do not go back to another residence while staying at the group home. Those at the group home participate in group activities. And they typically stay between 30 and 90 days, with an average stay of 47 days. Based on these facts, the circuit court did not err when it found that those staying at the Newport facility "reside" there.[19]

  c. Newport only admits those with a qualifying mental illness and does not admit current drug users, so it is not in violation of Code § 15.2-2291.

Code § 15.2-2314 states that in an appeal to the circuit court of an "order, requirement, decision or determination of a zoning administrator . . . the findings and conclusions of the board of zoning appeals on questions of fact shall be presumed correct." And the "appealing party may rebut that presumption by proving by a preponderance of the evidence . . . that the board of zoning appeals erred in its decision." *Id.* Both the BZA and the circuit court ruled against appellants on the question whether this group home will admit those who currently use or are addicted to illegal drugs.

---

[18] "Although 'reside' is not synonymous with 'resident' or 'residence,' the definition of those terms" is still instructive here because "[t]o 'reside' is to be a 'resident' or have a 'residence' as those terms have been interpreted by Virginia courts. Virginia cases interpreting the terms 'residence' and 'resident' have generally given the terms their plain meaning." *Bergman*, 25 Va. App. at 212 n.1 (citing *Long*, 71 Va. 718; *Smith*, 122 Va. 341).

[19] We do not establish a bright line rule that anyone admitted to a group home also necessarily "resides" at it. Different facts in a different case may lead to a different result. But under the facts of this case, where those at Newport's group home eat, live, and sleep there for between 30 and 90 days, we conclude that is sufficient to show that those that stay at this "residential facility" also "reside" at it.

- 21 -

Code § 15.2-2291 provides, in relevant part, that "mental illness . . . shall not include current illegal use of or addiction to a controlled substance."[20]  Appellants argue that "[b]ecause of Newport's open-door policy for drug users and addicts, Section 2291 confers no special zoning status on Newport's use of property."

Specifically, appellants raise three main arguments on their final assignment of error.  Two relate to a statement by Newport's CEO in the context of a separate pending application for a group home for children in a different jurisdiction.  Newport's CEO stated that

> [o]nly six percent of Newport Academy residents nationally have a primary substance abuse diagnosis.  However, applicants with a primary substance abuse diagnosis will not be admitted for treatment at the . . . Property.  As we have said before, an applicant whose primary diagnosis is a mental health disorder, but has a secondary diagnosis of substance abuse, will be admitted to the . . . Property.

To start, the record reveals that Newport's group home at 20173 Gleedsville Road will only serve those with a qualifying mental illness.  The record contradicts the neighbors' argument that Newport considers "current illegal use of or addiction to a controlled substance" as a mental illness in violation of Code § 15.2-2291.  Here, the evidence is both that (1) Newport only admits those with a qualifying mental illness such as depression and that (2) Newport does not admit anyone who currently uses illegal drugs.

We disagree with appellants that the statement by Newport's CEO, in the context of a separate pending application, mandated the BZA to find that the group home at 20173 Gleedsville Road would accept current drug users in violation of the statute.  The statement does

---

[20] "Zoning ordinances for all purposes shall consider a residential facility in which no more than eight individuals with *mental illness*, intellectual disability, or *developmental disabilities* reside, with one or more resident or nonresident staff persons, as residential occupancy for a single family."  Code § 15.2-2291 (emphases added).

not require a factfinder to conclude that this group home will admit current drug users, where Newport presented significant evidence that this group home would not admit current drug users.

The nationwide statistic did not compel the BZA or the circuit court to rule for appellants. The statistic cited by appellants applies to all Newport facilities in 11 states, and importantly, Newport has various licenses to provide different types of care and to treat different populations. And that statistic is of limited value because it reveals nothing about the specific group home here.[21]

In this case, Newport's license is to provide "mental health services," and it has not sought or obtained a license to treat substance abuse. Newport has several procedures in place to avoid accepting residents with drug problems, and it expels any resident found using drugs. For instance, those that stay at Newport must undergo a "very thorough screening process involving several layers of assessments conducted by licensed clinicians . . . ." And "use of drugs" is considered an "exclusionary criteria" and "subject[s] [one] to administrative discharge."

Newport's CEO testified before the BZA and explained that prospective residents are "ineligible for admission" if they exhibit "active substance abuse" or "need . . . medical detox." He explained that "[a]ny applicant with a primary substance abuse diagnosis, or requiring any sort of substance abuse treatment, will not be admitted." Drug testing occurs at the time of admission and as appropriate thereafter "depending upon the client's diagnosis, level of care, and the circumstances."

Ultimately, the BZA considered evidence and heard argument in determining whether this group home would admit current drug users. The BZA resolved this factual issue against

---

[21] The statement relied upon was made in the context of a pending application for a group home in a different jurisdiction for a different group of people (children). Thus, we are not persuaded that the statements by Newport's CEO compel a finding that this group home admits current drug users.

appellants, and that determination is presumed to be correct. *See* Code § 15.2-2314. The circuit court agreed with the BZA. We conclude that the circuit court did not err when it ruled that this group home is not in violation of Code § 15.2-2291.[22]

CONCLUSION

In No. 1161-23-4, we agree with the circuit court and hold that the deputy zoning administrator's letter was not appealable under Code § 15.2-2311. In No. 1164-23-4, we again agree with the circuit court and hold that there was no error in granting Newport a zoning permit under the applicable zoning ordinances and Code § 15.2-2291. Accordingly, we affirm the circuit court in both cases.

*Affirmed.*

---

[22] Appellants' last argument relies on a federal case to argue that if a group home applicant used drugs in the past, then they must undergo rehabilitative drug treatment to not be considered a current drug user under Code § 15.2-2291. *See United States v. Southern Mgmt. Corp.*, 955 F.2d 914 (4th Cir. 1992). We are not persuaded that this case has any application here. First, *Southern Management* involved the FHA, not Code § 15.2-2291, and there are significant differences between the two statutes. *Compare* Code § 15.2-2291, *with* 42 U.S.C. § 3602(h). Second, *Southern Management* involved the interpretation of the term "handicap" under federal law, and, notably, that term is absent from Code § 15.2-2291. Moreover, *Southern Management* relied upon the Americans with Disabilities Act in interpreting the term "handicap." Third, unlike in *Southern Management*, where the former drug addicts had no independent qualifying condition, here, Newport's residents all have independent mental illness diagnoses, including depression, anxiety, and eating disorders, other than substance abuse or addiction and, as noted, there is no evidence to support appellants' claim that Newport will admit current drug users. Also, unlike in *Southern Management*, those at Newport's group home do not claim protection under the FHA or Code § 15.2-2291 based on drug use or addiction.

- 24 -